KEITHLEY *et al.*, *Appellants*, v. KEITHLEY.

85 217
61a 430

85 217
142 250

1. **Equity Practice.** Where a jury, empaneled to try an issue in an equity case, fails to agree, the court may refuse to call another jury, and may decide the case on the evidence it has already heard before the jury which disagreed.

2. ———. The court in an equity case is not bound to submit issues to a jury, or to accept as its own the finding of a jury.

3. **The Evidence** in this case held to support the finding of the lower court, that the defendant's grantor had sufficient mental capacity to make a conveyance of land to him.

*Appeal from Ralls Circuit Court.*—HON. THEO. BRACE, Judge.

AFFIRMED.

*W. H. Biggs* for appellants.

(1) The court committed error in refusing either to submit to the jury, or itself to try the first, second and third issues, or either of them, as made by the pleadings. The first issue is certainly a material one. The defendant does not claim, and the deed itself negatives the idea that the conveyance was made as a gratuity. Courts of equity will not permit one to accept a conveyance for a consideration, and afterwards set it up as a gift. *Cadwallader v. West*, 48 Mo. 495. The trial court could not take the verdict of the jury upon a part of the issues, and then proceed to render judgment on the whole case without trying the remaining issues. *Leeper v. Lyons*, 68 Mo. 216. (2) The court erred in excluding the testimony of Dr. George E. Frazier. Dr. Reynolds had testified that Rowland Keithley was afflicted with epilepsy, and Dr. Frazier, who was a practicing physician of long standing, ought to have been permitted to testify as to the effect of the disease on the mind of a patient.

An expert may be asked general questions as to the laws of mental disorder, or decay, for the purpose of enabling the jury to weigh and apply the testimony. Abbot's Trial Ev., 117 ; 1 Greenl. Ev., sec. 440. (3) The court erred in withdrawing the fifth issue from the jury. The uncontradicted evidence of plaintiffs showed that a confidential relation existed between the defendant and his father, and that defendant had, by a long residence (interrupted for only about one year) with his father, acquired great influence over him, and hence the father was anxious for the defendant to come back to live with him. And the evidence in the case at least showed that the mind of the father had become greatly weakened and impaired by old age and disease. These facts being shown, the presumption that the deed in controversy was unfairly obtained, at once arises, and the burden is on the defendant to affirmatively show that the deed was executed fairly and freely by the father, and with a mind emancipated from the son's influence. *Cadwallader v. West, supra; Garvin v. Williams,* 44 Mo. 465; *Harvey v. Sullens,* 46 Mo. 147. (4) When weakness of mind is shown, and circumstances of undue influence by the other contracting party, a court of equity will interfere. *Tracy v. Sackett,* 1 Ohio St. 60 ; *Gartside v. Ishwood,* 1 Brown's Chan. R. 560 ; 1 Story's Eq., sec. 238 ; *Cruise v. Christopher's adm'r,* 5 Dana 181 ; *Whiteburn v. Heimes,* 1 Munford 557 ; *Buffalo v. Buffalo,* 2 Dev. & Bat. Chan. R. 241. When undue influence has once been acquired and operated on a party in the disposition of his property, it is not necessary to show that the undue influence was actually exerted at the time of the disposition of the property. *Taylor v. Wilburn,* 20 Mo. 306.

*Redd & Harrison* for respondent.

(1) While in an action at law the parties have the right to demand the trial of all the issues by a jury, no

such right exists. in a court of equity. 1 Story's Eq.,
secs. 31 and 190; *Dale v. Roosevelt*, 6 John. ch. 256;
*LeGuin v. Gouverneur*, 1 Johns. Cases, 436; *Burt v.
Rynex*, 48 Mo. 309; *Hickey v. Drake*, 47 Mo. 371.
(2) There was no testimony tending to show that Row-
land Keithley acted under duress. The *onus* of the
issue was on plaintiff, and he failed to make out his case.
Fraud will not be presumed in any case where the facts
consist as well with honesty as with fraud. *State ex rel.
v. Roberts*, 26 Mo. 533; *Henderson v. Henderson*, 55 Mo.
554; *Rumbold v. Parr*, 57 Mo. 592; *Ames v. Gilmore*, 59
Mo. 543. (3) The law presumes that every adult person
is sane, and has the capacity to contract. This legal as-
sumption is based on a fact of which every court will
take judicial notice, viz.: that sanity is the normal con-
dition of the human mind, insanity the abnormal.
*Jackson v. Vandusen*, 5 John. 158; *White v. Wilson*,
13 Vesey, Jr., 88; *Jackson v. King*, 4 Cowen, 216; *At-
torney General v. Paranther*, 3 Bro. C. C. 443; 1 Jar-
man on Wills, 72 and 74; 2 Starkie on Evidence, 1276.
*Non compos mentis*, in English, "not of sound mind,"
is a legal phrase, and imports a total deprivation of
sense. *Jackson v. King*, 4 Cowen, 217; *Odell v. Buck*, 21
Wend. 143; *Stewart's exec'r v. Lispenard*, 26 Wend. 300;
*The Barker Case*, 2 John. ch. 233; *Ex parte Cramer*,
12 Vesey, Jr., 450 to 452; *Burley's case*, 4 Coke 123. A
person being of weak understanding; "provided he is
neither an idiot nor a lunatic, " is no objection in law to his
disposing of his property. The law will not undertake
to measure the understanding of a man. If he be le-
gally *compos mentis*, be he *wise* or *unwise*, in con-
templation of law, he is the disposer of his own property;
his will stands as a legal and sufficient reason for his ac-
tions. Shepherd on Lunacy, 37; *Stewart v. Lispenard*,
26 Wend. 301. The fact that the mental faculties have
been weakened or impaired by old age, disease, or other
causes, in and of itself, affords no ground for impeach-

ing a deed or will, provided the party be *compos mentis* in the legal import of the term.

DeArmond, C.—Rowland Keithley owned three hundred and forty-two acres of land in Ralls county, worth about seven thousand dollars, and had some money, live stock, notes, and other personalty. In 1869 he made a will, in which he devised ten acres to his son, James T., and one hundred acres to another son, John C., and directed the general distribution, in a specified way, of the residue of his property, among his children and grandchildren. His children, of whom eight survived him, were all grown. One daughter had died, leaving two children. Some were very poor, especially a widowed daughter with a large family of girls. John C., the defendant, was married, but had no children. He had been a sufferer from asthma from his third year, and had remained with his father on the farm. In 1874 he moved off. His chief reason for going was his dissatisfaction because his father would not convey to him by deed a portion of the farm. He feared the will might be changed, or the one hundred acres otherwise disposed of, so that he would not get it. In January, 1876, after his store over in Illinois had been burned, he visited his father, then living alone at the old home, for the purpose, he says, of renting some land, but instead of offering to rent he proposed to move back and care for the old man, during the remainder of his life, if the latter would deed him two hundred acres. The father was willing to give him one hundred and fifty acres; and on a very cold day, the second after the son's arrival, January 21, 1876, they went together to New London, eight or ten miles distant, when and where was executed, acknowledged and recorded, the deed—a general warranty—to set aside which, the other children and heirs of Rowland Keithley, brought this suit. The one hundred and fifty acre tract conveyed was worth about four thousand dollars. The consideration ex-

pressed is "the care and support of said Rowland Keithley, and ten dollars." John C. moved back and took possession of the one hundred and fifty acres, his father living with him until January, 1878, when the latter, then between eighty and eighty-seven years old, died.

It is charged in the petition that the deed was without consideration; that the consideration was grossly inadequate; that John C. obtained the deed by fraud and coercion; that Rowland Keithley was so weakened in mind from old age, habits of intemperance and disease that he was not capable of making a valid conveyance.

The court submitted these issues to a jury:

"1. Was the mind of Rowland Keithley so impaired by old age, disease, or otherwise, that he did not have sufficient capacity to make a contract?

"2. Was said deed procured from Rowland Keithley by duress, fraud, or undue influence exercised over him by the said John C. Keithley?"

This issue was withdrawn after all the evidence was in. It also appears from the record that at some time, apparently at the conclusion of the evidence, the court submitted this further issue:

"At the time of the execution of the deed from Rowland Keithley to John C. Keithley, was the mind of the said Rowland so weakened, or impaired, by old age, disease, or otherwise, that he did not have sufficient mental capacity to make said deed?"

Plaintiffs complain of the refusal to submit issues as to whether: (a) The deed was made for a valuable consideration from John C. to Rowland; (b) whether it was made upon an adequate consideration; (c) whether, at the time of executing the deed, Rowland was laboring under great mental weakness, induced by old age and diseases. James T. Keithley administered on his father's estate. The will, made in 1869, was admitted to probate, but in the proceeding it was found that

Rowland Keithley had conveyed to James T. the ten acres devised to him, and had conveyed to John C. one hundred and fifty acres of other lands in lieu of the one hundred acres devised to him. And in establishing the will it was adjudged that the same should, except the clauses containing said two devises, be admitted to probate as the last will of the deceased.

More than two dozen witnesses were examined, the larger number for the defendant. It was shown that Rowland Keithley had had the epilepsy for thirty years. That the fits were generally brought on by excitement or anger. He had a fit while his son, John C., and he were alone at his house, the day before the deed to John C. was made. He was generally stupid for two or three days after a fit. It is in evidence that the disease tends to shatter the mind. Rowland Keithley was a very eccentric man. He was energetic and industrious, and well preserved for a man of his years. He always managed his own affairs, sold his grain and live stock, and collected and loaned his money. He was very obstinate, and generally had his own way. He was on friendly terms with all his children and grandchildren. He was strongly attached to John C. and John C.'s wife. He used liquor occasionally all his life, but there is no evidence of drunkenness, or injury from intemperance. He never showed any dissatisfaction with his act of deeding to John C. the one hundred and fifty acres of his farm, but seemed to be contented. Some of the witnesses thought his mind had been failing for a number of years, and that he was not able to comprehend the purpose and effect of the deed he made. Others regarded him as of sound and vigorous mind to the hour of his death, which was from pneumonia. The circuit clerk of Ralls county, who prepared the deed according to his direction, and took his acknowledgment, testifies that Rowland told him clearly how he wished the deed drawn, gave him the description of the land to be conveyed, and compared with him the description

after the deed was written, and seemed to have a clear understanding of the whole matter. The jury disagreed, as a former one had done, and was discharged. The court refused to call another jury, as plaintiffs asked, but decided the issues on the evidence already heard. The finding was for defendant. The bill was dismissed and judgment was rendered against plaintiffs for costs, and they appealed.

I. There was no error in the refusal to submit to the jury the additional issues which plaintiffs asked to have submitted. They were fairly comprehended in the issues which the court did submit.

II. Nor was there error in the withdrawal of the second issue at the conclusion of the evidence, for there was no such issue on the evidence.

III. It was not error for the court to refuse to call another jury, or to decide the case on the evidence it, as well as the jury which disagreed, had heard. The court was not bound to submit any issues to a jury, or to accept, as its own, the finding of a jury. *Snell v. Harrison*, 83 Mo. 651, and authorities there cited.

IV. It only remains to be determined whether, under the evidence in the case, which we should consider, and have considered, the judgment ought to be sustained or overturned. There is no lack of evidence to uphold the judgment. It was for Rowland Keithley to determine how he should dispose of his property. I think he had the mind and understanding to do this, and did it to his own satisfaction. He was a remarkable man, full of eccentricities, but they did not interfere with his management of his own affairs. He lived in contentment for two years after he made the deed to John C., cultivated a crop each year, sold his stock and farm products, and finally died of acute pneumonia, as his physician testified. Many things are told of him, showing that he was peculiar, but not an imbecile; as to how obstinate he was; how he would sometimes speak to acquaintances, and at other times pass them without

speaking; how he would become enraged upon slight provocation. He was sometimes despondent, and one of his daughters heard him threaten to commit suicide. A witness once heard him swear while trying to button his shirt collar; but it will not do to regard this as a symptom of softening of the brain.

I think the judgment should be affirmed. All concur, except Henry, C. J., absent.

