# HENRY C. FARMER v. STILLWATER WATER COMPANY
## and Another.[1]

### May 14, 1909.

### Nos. 16,073—(46).

**Attorney's Lien.**

In 1904, N., an attorney, agreed in writing as to his compensation for services in conducting certain litigation for F. In the action begun and tried, the jury returned a verdict for $21,700. A new trial was granted. On appeal, that order was affirmed. N. refused to perform further services, because he insisted F. had not agreed to pay anything for a second trial. N. testified that F. then agreed to pay him what his services were reasonably worth. Thereupon the complaint in the action was amended, a trial had, and a verdict returned in favor of plaintiff in the sum of $50,000. An appeal

1Reported in 121 N. W. 418.

taken was argued. Pursuant to an order made upon petition by N., issues were framed to determine the validity and amount of N.'s attorney's lien, notice of which had been duly served. After the jury found that the contract had been modified as claimed by N., but had failed to agree as to the value of his services, the court found as a matter of fact that it had been agreed by F. to pay the reasonable value of N.'s subsequent services, that the value of N.'s services was $11,500, and as conclusions of law that N. was entitled to a lien to that amount, less payments made. It is *held:*

1. The fact that a verdict had been rendered entitled plaintiff to an attorney's lien. Crowley v. Le Duc, 21 Minn. 412, followed and applied.

2. N. did not waive his lien by agreeing that F. should collect the money on the verdict and pay N. after collection was made.

3. The district court had jurisdiction to entertain the equitable proceedings to enforce the lien, although the action in which the services had been rendered had been settled and dismissed.

4. The fact that the judge who had submitted questions to a jury changed his mind and tried the case himself, because of developments on the trial, was *not error in this a case triable by the court.*

5. The finding of the trial court that F. agreed with N. to pay what N.'s services were reasonably worth is sustained by the evidence. That oral agreement was not void for want of consideration, constructive fraud, or otherwise.

6. The finding of the trial court as to the value of N.'s services was supported by the testimony.

Petition of J. C. Nethaway in the district court for Washington county for an order requiring plaintiff and defendants to show cause why petitioner's lien for $15,000 for services to plaintiff in securing a verdict therein should not be established and determined by the court, and for a restraining order forbidding payment of the judgment until petitioner's rights were determined. Upon the direction of the court, pleadings were made and served in the manner provided by law for civil actions and, issues having been joined between the petitioner and the plaintiff, the matter came on for trial. The jury having found the written contract was modified by a subsequent oral agreement and having disagreed as to the value of the services, was dismissed and the court found in favor of the petitioner for $11,500, less the sum of $1,035 which had been paid thereon, and that petitioner was entitled to a lien for the balance on certain shares of stock in defendant company and certain money to be paid to plaintiff

in settlement of plaintiff's verdict against defendant company. From orders denying plaintiff's and defendants' motions for a new trial, Stolberg, J., they appealed. Affirmed.

*F. V. Comfort* and *J. N. Searles,* for appellants.

*Manwaring & Sullivan,* for respondent.

JAGGARD, J.

On the thirtieth of August, 1904, J. C. Nethaway, as party of the first part, and H. C. Farmer and Horace Voligny, as parties of the second part, signed this written agreement:

"Witnesseth, that for and in consideration of the sum of two hundred dollars ($200.00), and the further sum hereinafter mentioned, the said John C. Nethaway agrees to immediately commence an action in the district court of Washington county, in favor of said H. C. Farmer and Horace Voligny, and against the Stillwater Water Company, to recover damages for drawing the water off of lot nineteen (19) of block twenty-one (21) of the city of Stillwater, and for commencing that action and for all services thereafter in the district court the said John C. Nethaway is to receive the sum of one hundred dollars ($100.00), fifty dollars ($50.00) being paid upon the execution of this contract, and the balance, fifty dollars ($50.00), to be paid upon the rendition of a verdict in the district court, no matter what that verdict may be; and the said Farmer and Voligny are to pay all costs outside of the attorney's fees incurred in said action, and it is further agreed that, if an appeal is taken to the supreme court in said action by either of the parties thereto, then and in that case the said Nethaway, for his services therein, is to receive the further sum of one hundred dollars ($100.00), said sum to be paid immediately after the argument of the case in the supreme court.

"It is further understood and agreed by the parties hereto that the said Nethaway is to receive the following sums in addition to the said two hundred dollars ($200.00), to wit: If a verdict is obtained in said action in favor of the plaintiffs, the said Nethaway is to receive ten per cent. of the amount recovered up to and including ten thousand dollars ($10,000.00), and five per cent. upon any sums recovered over said ten thousand dollars, and said percentage to be

paid when the sum is collected from the defendant, but the two hundred dollars ($200.00) hereinbefore mentioned to be paid as hereinbefore set forth; and the said Farmer and said Voligny hereby agree to make such payments as hereinbefore stated."

Pursuant to this agreement, the action was commenced by parties of the second part against the Stillwater Water Company for the recovery of $25,000 damages. The action was tried in May, 1905. The jury returned a verdict for $21,700. After some six or eight months' delay, a motion for a new trial was granted. On appeal to this court the decision of the district court was affirmed. Farmer v. Stillwater Water Co., 99 Minn. 119, 108 N. W. 824. Voligny, one of the parties of the second part in the agreement above stated, by order of court ceased to be a party. However, he gave full authority to Farmer, the other party of the second part, to manage the litigation.

Shortly after the case was remanded, and in August, 1906, Nethaway refused to perform any further services in the case. According to Nethaway's testimony, Farmer said: "We will have to amend that complaint and ask for $40,000 or $50,000." Nethaway insisted that his duty under the written contract had been performed; that Farmer had not agreed to pay him anything for a second trial, nor to pay him anything further at all. After some discussion, according to Nethaway, Farmer said: "All right; go ahead, and draw that amended complaint, make your motion, and I will pay you what your services are reasonably worth, in view of what I get out of the case." Thereupon application to amend was made and granted. The case was heard. In due course a verdict was returned in favor of plaintiff Farmer in the sum of $50,000. Motion for a new trial was made by the water company and denied by the trial court. An appeal was taken to this court, argued and submitted in January, 1908. While the appeal was pending, and on the fourteenth of February, 1908, a settlement was made between Farmer and the Stillwater Water Company, providing that the appeal be dismissed within thirty days; that within such time the water company should transfer one hundred shares of capital stock of the company, of the par value of $50 each, and pay or cause to be paid the sum of $9,350; that Farmer should execute a warranty deed to land in which the

spring involved in this litigation is situated and protect against Neth-away's attorney's lien.

On the eleventh of January, 1908—that is, after the argument in the supreme court and before the settlement—Nethaway served due notice of attorney's lien for $15,000 on the verdict rendered. Pursuant to an order made upon a petition by Nethaway, issues were framed to determine the validity and amount of that lien. The trial court submitted two questions of fact to a jury. One of these, name-ly, whether the contract had been modified as claimed by Nethaway, the jury answered in the affirmative. As to the other, namely, what was the value of Nethaway's services, the jury failed to agree. The jury was discharged, and the case set down for hearing. On July 28, 1908, the court filed its findings of fact and conclusions of law. It found, inter alia, that the agreement by Farmer to pay the rea-sonable value of Nethaway's subsequent services was executed in con-nection with a dispute as to what he should be paid; that it was orally agreed that each party waived his respective rights and claims under the written contract; that the settlement between Farmer and the water company was made without aid or advice or assistance of Nethaway; that Farmer had paid plaintiff on account of services $1,035; that the value of Nethaway's services was $11,500. As con-clusions of law the court found that Nethaway had a lien for $10,465, and other matters not here material. This appeal was taken from the order of the trial court denying motion for a new trial.

1. The first group of the sixty assignments of error is addressed to the proposition that Nethaway under neither the written nor the oral contract had or could have had a lien on the fruits of the liti-gation.

In the first place, the assignment is: This action was begun prior to the enactment of the Revised Laws of 1905. The rule in force at that time was that an attorney had no lien on a cause of action where the damages were unliquidated until a judgment had been entered fixing the amount. We are of opinion, however, that in the view that the statutes of 1894 applied, and that Nethaway's rights are here determined by subdivision 3, § 6194, the fact that a verdict has been rendered entitled him to a lien. In Crowley v. Le Duc, 21 Minn. 412, respondent's attorney commenced the action against ap-

pellant and prosecuted it to a verdict. Thereafter, and before judgment was entered, they served notice of their intention to claim a lien. The case was afterwards settled without the intervention or knowledge of said attorneys. The court held that the statute, being a remedial one, was to be largely and beneficially construed in the advancement of the remedy, so as to sanction and protect, and not to defeat, the rights and objects intended by its provisions. And see Weicher v. Cargill, 86 Minn. 271, 90 N. W. 402; Smith v. Chicago, 56 Iowa, 720, 10 N. W. 244. In none of the cases to which counsel for Farmer refers us had there been a verdict rendered for the client of the attorney asserting a lien. They are, therefore, not relevant.

In the second place, it is contended that, if Nethaway had a lien, he waived his right thereto by consenting and agreeing that Farmer should collect the money on the verdict and pay him after the collection was made. Nethaway's conduct, however, cannot reasonably be so construed. Nothing he said suggested a waiver. What he did was done to facilitate results, and was consistent with his intention to assert a lien. Intention, actual or constructive, to waive the lien, was wanting. His consent that Farmer should settle was in no wise prejudicial to Farmer. All the elements essential to a waiver are wanting. There is no analogy between this case and the case of a pledgee, who returns the property on which he claims a lien to the pledgor in order that he may deal with some third person with respect to the property pledged.

In the third place, it is urged that at the time of the settlement the appeal was pending in the supreme court; that no decision had been rendered therein, and never would be, because the action had been settled and dismissed, and the dismissal duly filed. Therefore no judgment ever has been or will be entered. Therefore the district court had no jurisdiction, because the case had never been remanded from the supreme court. But the jurisdiction requisite to this proceeding was not the same which would have been necessary to have taken another step on behalf of Farmer against the water company. In all but matters of form, that controversy was at an end. The jurisdiction here necessary was to entertain equitable proceedings and to enforce a lien on the verdict rendered. The district court undoubt-

edly had that jurisdiction. See Weicher v. Cargill, 86 Minn. 271, 90 N. W. 402; subdivision 2, § 2289, R. L. 1905.

2. Defendant's second assignment of error is that the court erred and abused its discretion when, after trial by jury, it tried the case as a court case without a jury. This falls with the conclusion thus reached. The proceeding was in equity, in which defendant was not of right entitled to a jury trial. Whether it was in the exercise, and not in the abuse, of discretion that the trial court changed its mind, after having once submitted the question to a jury, and then tried the case itself, depends upon facts appearing in a particular record. In this case no abuse of discretion appears. The authorities concur. 2 Thompson, Trials, p. 1712; Keithley v. Keithley, 85 Mo. 217; Shapira v. D'Arcy, 180 Mass. 377, 62 N. E. 412; Field v. Holland, 6 Cranch, 8, 3 L. Ed. 136. And see Mitchell, J., in Smith v. Barclay, 54 Minn. 47, at page 55, 55 N. W. 827.

3. The gist of the appeal is that the trial court erred in its findings of fact that Farmer and Nethaway agreed that Nethaway thereafter should be paid what his services would be reasonably worth, having regard to the amount which should be recovered. The substance of defendant's argument is this:

"1. There was no 'dispute' which could furnish a basis for a consideration to sustain the alleged parol contract modifying the original written contract.

"2. There was no consideration for any new agreement, because,— (a) The attorney misrepresented to his client the obligations resting upon the attorney under the original contract. (b) There were no exceptional circumstances that justified the attorney in refusing to carry out his original contract, and if the client made any promise to pay other or different compensation, it was nudum pactum. (c) If there was a new parol agreement, in form, it was one the court will not enforce, because the attorney gained by it an advantage he did not have before (in changing a gamble or speculation into an absolute right to compensation), which creates a legal presumption of fraud, which has not been rebutted by any evidence showing that the client did not act under undue influence of the attorney, or that the new agreement for consideration was a fair one (instead of one that ignored all payments already made, and calling for repayment

of services previously rendered, and an absolute payment, instead of a contingent payment), or that the client knew his rights under the old contract and was at liberty to act without restraint."

The first question logically arising under this argument is whether the written contract had in fact been modified or superseded. Was the oral agreement under which Nethaway claimed ever made? Defendant urges that "the preponderance of evidence against the finding of the court of a new contract is such that the finding cannot stand." Opposed to Nethaway's testimony there was that of Farmer, which was considerably impeached, and that of three witnesses, who testified to statements made by Nethaway which are not entirely consistent with the new or modified contract. The question was clearly one of fact. Both the jury and the court believed Nethaway. We discover no reason for disturbing the trial court's finding.

The second question is: Was the resulting contract one which the court will enforce? No controversy arises as to the general principles of law involved. This court has uniformly held persons in a fiduciary capacity, who deal with others having a right to rely upon their good faith, to the strictest accountability, and has afforded the largest possible proper measure of relief for the abuse of confidence. There is no question that this principle applies to the relationship of attorney and client, and to agreements between them for increased compensation to the attorney, after the confidential relationship is commenced. The burden is on the attorney to show by satisfactory evidence that the resulting contract is free from all fraud, undue influence, or exorbitancy.

The turning point in the controversy is the construction to be placed upon the contract between Nethaway and Farmer. If defendant's view of the contract be correct, most of his conclusions follow. If it be incorrect, most of his conclusions fail.

Defendant insists that the original contract was an agreement to commence an action and to render all services thereafter, at any time, at any stage of the proceedings in the district court, not for one trial, but for any trial and for all trials under all possible circumstances. The work he might be compelled to do might prove to be as great as that involved in all of this historical litigation lasting through years, concerning the most difficult questions of law and fact, and depending

for success upon the establishment of a change in fundamental rules of jurisprudence. See Stillwater Water Co. v. Farmer, 89 Minn. 58, 93 N. W. 907, 60 L.R.A. 875, 99 Am. St. 541; Stillwater Water Co. v. Farmer, 92 Minn. 230, 99 N. W. 882; Farmer v. Stillwater Water Co., 99 Minn. 119, 108 N. W. 824. None the less, all that Nethaway could recover would be $200 in cash and a small percentage of the damages recovered. To show so extremely unfair and unreasonable a contract, the terms of the instrument must be clear and specific, and necessitate this interpretation.

The contract in question does not contain them. This construction is derived only from the words "for all services thereafter in the district court." The contract contains no specific reference whatever to a second trial, nor to any further trial. On the contrary, it uses words which tend to restrict these general terms to one trial before the district court, and one appeal. The contract was that Nethaway should receive $200 for commencing an action and for all services thereafter in the district court, $100 to be paid upon the rendition of a verdict, no matter what that verdict should be, and after an appeal had been taken to the supreme court $100 more was to be paid immediately after the argument of the case in the supreme court. It was further agreed that, if a verdict was obtained, Nethaway was to receive ten per cent. up to $10,000 and five per cent. on amounts above. The universal rule for the construction of contracts is that, when the general provisions are followed by specific provisions, the specific provisions control. The natural construction of this contract from its four corners is that it did not govern a subsequent trial in the district court or a subsequent argument in the supreme court.

But, apart from the question whether as a matter of law the written contract was an agreement for one trial only in the district court and one argument only in the supreme court—which we do not decide—it is clear that no bad faith is attributable to Nethaway from the mere fact that he imputed to it that legal effect. The record discloses that his client, Farmer, was a shrewd business man, versed in litigation, not susceptible to undue influence, and not likely to be overreached. The parties did not deal at arm's length; but defendant has demonstrated that he was abundantly able to take care of himself.

108 M.—4.

It is mere playing with words to urge, as defendant does, that in view of Nethaway's testimony no dispute arose between Nethaway and Farmer as to Nethaway's compensation. The evidence supports the findings of the trial court. It is futile to deny that a substantial change in the surrounding circumstances had taken place. When the contract was entered into, the lawsuit, as defendant's brief, quoting from Nethaway's testimony, pointed out, was a mere gambling operation, a speculation in litigation. The written contract was executed in that conception of it. When the second agreement came to be made, a new situation had developed. Defendant water company had committed a trespass after the suit had been begun. Both Farmer and Nethaway were satisfied that a substantial and demonstrable wrong had been done, and that Farmer's damages had been greatly increased. The complaint, it was agreed, should be amended, so as to ask for relief in the sum of $59,500. The responsibility resting upon the attorney had largely increased. The difficulty, as well as the importance, of the litigation, has exceeded the reasonable expectation of all parties. The labor of the attorney had proved, and in the future was likely to prove, greater than either party originally contemplated. It was natural, under the circumstances, that the attorney, thinking the written contract did not cover the second trial, desired to come to a definite understanding with his experienced client as to what he should be paid for the important services the future conduct of the lawsuit would involve. It was not, as has been previously set forth, a constructive fraud on his part to insist that the written agreement did not contemplate these services. No actual fraud is shown, nor, as we understand, claimed. It was therefore propert that he should agree to accept in payment what the services he agreed to render would be reasonably worth, and that Farmer should agree to so pay him. That was a "fair, reasonable, and just remuneration." The consideration of the new agreement was the mutual promises of the parties. No voluntary gift, transfer of property in litigation or otherwise, security as collateral to the attorney's claim, reasonable or unreasonable, nor excessive fee, is involved here. The authorities which defendant cites with reference thereto are sound enough, but not applicable. It is true that it reasonably might have been, and was, found proper that Nethaway secured

an absolute right to compensation. It was immaterial, in the view here taken of the original contract, that he had previously agreed to accept a partially contingent fee for described services.

The plain law is this: The finding of the trial court that Farmer agreed to pay Nethaway what his services were reasonably worth is sustained by the evidence. The finding, in effect, that such contract is not void for want of consideration, constructive fraud, or otherwise, is fully justified by the record.

4. The value of Nethaway's services was a pure question of fact. The amount fixed by the trial court was sufficiently supported by the testimony. No adequate reason for disturbing its finding appears in the record.

5. We have examined all other assignments of error in the brief. The objection that Voligny, who was a party to the first contract, was not a party to the second contract, raises no substantial question. Farmer had full authority to act for him. However it may have been at one time, on the facts as disclosed by the record, there is no question that Nethaway, and not the bank, was the real party in interest. No attention has here been paid to the question as to the right of the water company to appeal. Its brief has been considered as an aid to this court. It is bound by this decision as to Farmer's rights. No other assignments of error justify either consideration in detail or reversal.

Affirmed.