## LOUIS W. HOLLOWAY v. JACOB M. DICKINSON.[1]

July 11, 1917.

Nos. 20,415—(220).

**Action under Federal act — lien of attorney.**

1. An attorney has a lien upon a cause of action arising under the Federal Employer's Liability Act when an action thereon is instituted in the courts of this state, and in such action the lien may be enforced.

**Champerty.**

2. The intervener's contract with plaintiff cannot be held champertous as a matter of law.

**New trial denied.**

3. No error occurred in the trial of sufficient materiality to entitle defendant to a new trial.

Action in the district court for Hennepin county against the receiver of Chicago, Rock Island & Pacific Railway Company. George C. Stiles filed his complaint in intervention and demanded judgment for $2,490.90 for services as attorney rendered under contract with plaintiff in the main action. The answer set up that the contract between intervener and plaintiff was champertous and was repudiated by the guardian of plaintiff as soon as she was appointed, on the ground that it was champertous and made with a person of unsound mind. The matter was tried before Dickinson, J., and a jury which returned a general verdict in favor of intervener for $2,166.67, and returned an affirmative answer to the question whether plaintiff was mentally competent to make the contract and a negative answer to the question whether the contract was champertous. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant receiver appealed. Affirmed.

*Stringer & Seymour,* for appellant.

*Brooks & Jamison* and *D. C. Edwards,* for respondent.

[1]Reported in 163 N. W. 791.

Holt, J.

This appeal concerns the enforcement of the attorney's lien after the parties to the action settled the same without compensating the attorney for the services he rendered plaintiff. On the application of the attorney, the court vacated the dismissal of the action, and permitted him to intervene, for the purpose of having his right to a lien and the amount thereof determined. The issues were submitted to a jury. A general verdict was rendered in favor of the intervener, and by special verdict it was found that plaintiff was mentally competent to make the contract under which intervener asserted his lien, and that such contract was not void for champerty. Defendant appeals.

Appellant claims that he is entitled to judgment notwithstanding the verdict for two reasons: (1) The cause of action being one arising under the Federal Employer's Liability Act the attorney's lien given by the state law does not attach thereto; (2) the contract under which the lien is asserted is champertous as a matter of law. It is contended that in the act referred to Congress legislated upon every phase of the subject of the payment of damages to employees injured while engaged in interstate commerce, citing Mondou v. New York, N. H. & H. R. Co. 223 U. S. 1, 32 Sup. Ct. 169, 56 L. ed. 327, 38 L.R.A.(N.S.) 44; Michigan Cent. R. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. ed. 417, Ann. Cas. 1914C, 176; Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. ed. 1062, L.R.A. 1915C, 1, Ann. Cas. 1915B, 475; Staley v. Illinois Cent. R. Co. 268 Ill. 356, 109 N. E. 342, L.R.A. 1916A, 450; and that this legislation includes the amount of recovery and distribution thereof under such decisions as Gulf, C. & S. F. Ry. Co. v. McGinnis, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. ed. 785; and North Carolina R. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. ed. 591, Ann. Cas. 1914C, 159; Taylor v. Taylor, 232 U. S. 363, 33 Sup. Ct. 350, 58 L. ed. 638. Hence, it is said, that state statutes cannot impress an attorney's lien on the cause of action, or enforce payment of any sum of money except the sum contemplated by the act, and that only to the beneficiaries thereof. To do more is said to penalize the railroad company and to burden interstate commerce. The argument of counsel is ingenious but not convincing.

Congress has not attempted to regulate the dealings between the railroad employee, injured in interstate commerce, and his attorney. No doubt, that body from the first inception of this sort of legislation realized full well that the railroads, as a rule, would not voluntarily pay adequate compensation to the injured employee or his beneficiaries; but that usually such compensation could be obtained only at the end of a bitterly contested lawsuit requiring an attorney's services, or through a series of negotiations carried on by an attorney. It could not have been contemplated that this work of an attorney should be a gratuity. Neither is it supposable that the members of Congress are unaware of the regrettable fact that among attorneys there has long existed keen competition for this sort of litigation and frequent overreaching in bargaining for an unconscionable fee. Notwithstanding all this, we find no provision in the act in any manner bearing upon the relation or compensation of an attorney who is employed to enforce the liability thereby created. The fee going to the attorney cannot be considered a burden upon the carrier or, indirectly, upon interstate commerce. It comes out of the sum which, by the settlement or the judgment in the action, is awarded the client. The person entitled to compensation under the Federal Employer's Liability Act has the right to enforce his cause of action in the state courts, and when he so elects we see no reason why, in the absence of Federal legislation indicating to the contrary, the attorney may not call upon the court to protect his rights under the lien given by the state statute upon the cause of action. In the instant case defendant had full notice of the attorney's rights before the payment of the money on the settlement made with the client. Before such settlement was made defendant's representative interviewed intervener and announced that no effort would be made to protect against the lien—defendant taking the ground that intervener had no lawful lien which he could assert.

The jury found the contract between plaintiff and intervener not champertous. We are asked to hold as a matter of law that it was. The contract on its face does not indicate champerty. And we do not think the evidence conclusively shows that it was solicited so as to bring it within the condemnation of such cases as Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035; Gammons v. Gulbranson, 78 Minn. 21, 80 N. W. 779; Holland v. Sheehan, 108 Minn. 362, 122 N. W. 1, 23 L.R.A. (N.S.)

510, 17 Ann. Cas. 687; or even Ellis v. Frawley, 165 Wis. 381, 151 N. W. 364. There was evidence that the invitation to accept the employment came through a party who had no connection with the attorney or with Mr. Roe, the attorney's agent or servant. One Lamb who had known Roe for a long time, and had been a railroad employee for years, was health officer at Moline, Illinois, and as such frequented the hospital there. After plaintiff's injury, wherein he lost his right arm, he was taken to this hospital, where Lamb met and talked with him. According to Lamb's testimony, plaintiff stated he desired some one to handle his case. Lamb told him he knew Roe who worked for intervener, and that intervener was a good attorney for personal injury cases. Thereupon, after consultation with plaintiff's sister, Lamb wrote a letter to Roe at Minneapolis concerning the injury to plaintiff and stating: "He (plaintiff) asked me if I would write you and come down and interview him and make arrangements to handle his case. I told him I would write to you as soon as I returned home which I have done." This letter was exhibited to intervener and he directed Roe to go to Moline, see plaintiff and investigate the case. Roe so did, and made a contract with plaintiff in behalf of intervener, and subject to his approval, to handle the case upon a contingent fee of 1-3 of the amount that might be obtained by settlement or suit. When plaintiff was able to travel, he came to Minneapolis with Lamb; and there intervener, after a conference with plaintiff, ratified the contract made by Roe and commenced this action against defendant. There is nothing in the record which would justify us in holding Lamb's testimony of no probative force. It is plain that, if the jury accepted his version of how intervener's employment came about, there is nothing akin to champerty in the contract, for then neither Roe nor intervener solicited or incited litigation over plaintiff's cause of action. Defendant was not entitled to judgment notwithstanding the verdict.

Defendant proposed to prove that intervener had had so large a number of personal injury cases, during the year and a half preceding his employment in this case, that the inference would be that active solicitation was used in procuring them, and that he employed persons, not attorneys, to travel and solicit such cases for him in other states, and that Roe had been so engaged. Objection to the proffered testimony was sustained and error is assigned on the ruling. Intervener admitted that he had built up

an extensive practice, growing out of claims against railroads for personal injuries and damage and loss of shipments of goods, and admitted the employment of various assistants among whom was Roe. Roe's contract of employment was in writing, was received in evidence and spoke for itself. The trial court permitted a very searching cross-examination of both intervener and Roe in relation to all matters touching the particular contract in suit. We think the court did not abuse its discretion when it excluded the proposed offers upon collateral matters, many of which were admitted by intervener or established by written documents. The vital issue for the jury was the character of the contract under which intervener claims compensation from plaintiff. As to that, intervener knew what Roe did from the start, and, if Roe actually solicited plaintiff's case, intervener cannot and did not attempt to escape the consequences by pleading ignorance. Nor do we think the clause in Roe's contract of employment is important here, even if ambiguous, for the issue was: What did he do in the instant case? Intervener did not claim want of authority in Roe to do what he did do in the premises.

An exception is taken to a sentence in the court's charge, which refers to the contract under which Roe worked, and states that the court had opened the door for the admission of evidence showing its practical operation. The statement was evidently an inadvertence, for testimony of that character had been excluded as already noted. Considering that the exclusion was without error, it is not conceived how this sentence in the charge could have prejudicially affected defendant.

Our conclusion is that no error occurred which requires a new trial.

Order affirmed.

HALLAM, J. (dissenting).

It appears to me the retainer of intervener as attorney for plaintiff, if not solicited, was at least procured by Mr. Roe under the contract between intervener and Roe. This contract between intervener and Roe was champertous and void and it vitiated the contract between intervener and plaintiff.

I am of the opinion too that the court should have received the proof offered by defendant of "the general method * * * of doing business" between intervener and Roe under their contract as tending to show that Roe did, in fact, solicit this case.