**BYRAM et al. v. MINER et al.**

No. 8896.

Circuit Court of Appeals, Eighth Circuit.

Feb. 13, 1931.

Rehearing Denied March 16, 1931.

C. O. Newcomb, of Minneapolis, Minn. (F. W. Root and A. C. Erdall, both of Minneapolis, Minn., on the brief), for appellants.

F. M. Miner, of Minneapolis, Minn (Robert J. McDonald, of Minneapolis, Minn., on the brief), for appellees.

Before STONE and BOOTH, Circuit Judges, and DEWEY, District Judge.

BOOTH, Circuit Judge.

This is an appeal from a decree in favor of appellees, interveners below, involving their right to recover from defendants, appellants herein, certain moneys claimed by interveners on account of attorneys' liens in three actions against defendants in which interveners were attorneys for the plaintiff.

The main facts are undisputed, and are, in substance, as follows:

On July 5, 1925, one Minnie A. Erz, her husband, Mathias, and minor daughter, Virginia, residing at Watauga, S. D., were riding in an automobile driven by the husband. At a railroad crossing between Morristown and Watauga, in Corson county, S. D., on the line of the Chicago, Milwaukee & St. Paul Railway Company, said automobile was struck by a railroad train belonging to said company. The husband and daughter were killed. The wife, Minnie A. Erz, was injured.

In February, 1926, Mrs. Erz brought three actions against appellants, hereinafter called defendants, in the state district court of Ramsey county, Minn. One action was in the name of Mrs. Erz for her personal injuries sustained in the accident above noted. The other two actions were brought by her as special administratrix of the estates of her daughter and husband, respectively; she having been duly appointed such administratrix by the probate court of Hennepin county, Minn. Appellees Miner and McDonald were attorneys for Mrs. Erz in each of these actions, having been appointed by a written agreement of employment. On March 9, 1926, these three actions were removed to the United States District Court, District of Minnesota, Third Division. Issue was joined in these actions in the federal court, and they stood undetermined and for trial therein until the opening day of the November, 1927, term.

Meantime, in September, 1927, while Mrs. Erz was undergoing treatment at the Mayo Clinic at Rochester, Minn., one Bingham, a claim agent for the defendants, called on her and advised her that he had come to settle her three cases. He told her, among other things, that the railroad company was not legally liable, but that it would cost about $3,500 to bring witnesses from South Dakota to Minnesota to try the cases. Bingham read her a letter, purporting to be from Miner and McDonald, to the effect that Miner and McDonald advised the railroad company that plaintiff's three cases were not cases of lia-

bility, and that they were not going to try the cases, and that they could not recover for her upon the trial. Bingham told her further that she need not worry about the fees due her attorneys. Bingham suggested going to Minneapolis to consummate a settlement. She objected to this, and then Bingham told her they could settle the cases at Rochester, Minn., and that the company would settle the three cases that were then pending in the United States court for Minnesota for $3,550. Mrs. Erz took a week to think the offer over, and about October 8, 1927, Bingham again called and again offered her $3,550 in settlement, and she agreed with Bingham that she would accept the $3,550 in settlement of her three cases then pending in the United States court for Minnesota. Bingham then advised her for the first time that it would be necessary for her to go with him to South Dakota to make the settlement and that it could not be made either at Rochester or Minneapolis, but had to be made at Lemmon, S. D.; that he could not settle at Rochester because she would have to be appointed administratrix within the state of South Dakota. The result was that early in October, she went with Bingham to South Dakota at the expense of defendants, where the following steps were taken under Bingham's guidance: She was introduced to a local attorney there, and with his aid was appointed special administratrix of the estates of her deceased husband and daughter by the county court for Corson county, S. D.; she at once began three actions in the circuit court of the Twelfth judicial circuit of South Dakota against defendants for damages on the identical causes of action set up in the cases pending in the United States District Court in Minnesota; service was had on the defendants; and on October 10, 1927, she and the attorney provided for her by Bingham, and the local attorney for defendants, appeared before the judge of said Twelfth judicial circuit at Lemmon, S. D. The attorneys for defendants tendered judgments in said three actions as follows: $1,550 in the action involving the death of Mr. Erz; $1,000 in the action involving the death of the daughter; and $1,000 in the action involving injuries to Mrs. Erz. These tenders were accepted by Mrs. Erz, and judgments were entered thereon accordingly. On the same day, the amounts of the judgments were paid in cash by Bingham to Mrs. Erz, and the several judgments were duly satisfied of record.

On about October 19, 1927, the answers of the defendants in the three actions then

pending in the United States District Court in Minnesota were amended, and in each of such amended answers, the judgments and the satisfactions thereof in the circuit court of the Twelfth judicial circuit for Corson county, S. D., were asserted in bar of the further prosecution of the actions.

At the opening of the November, 1927, term of the United States court for the Third division of the district of Minnesota, the actions were dismissed on account of the bar of the three judgments last mentioned. Thereafter Miner and McDonald, the attorneys for the plaintiff in said actions, petitioned the court to have the dismissals vacated and set aside for the purpose of having the court summarily determine their liens and grant to them judgment against defendants for the amount of their liens, or, in the alternative, to permit Miner and McDonald as lien claimants to intervene in said actions for the purpose of having the court determine their liens. The application of Miner and McDonald was contested by the defendants. After various hearings, the court, on February 25, 1929, entered an order containing the following:

"The questions of fact involved in this proceeding ought not to be determined summarily by this court on affidavits, and I am therefore granting the motion of Miner & McDonald in so far as they ask for permission to intervene in these actions and to have them reinstated for that purpose. They may, within ten days after the filing of this order, serve and file their complaint or complaints in intervention, and the defendants may have ten days within which to answer the complaints, and thereafter Miner & McDonald may have ten days in which to reply. After issues are joined, the actions may be placed upon either a general or special term calendar for trial.

"In so far as the dismissals of these actions affect the right of Miner & McDonald to intervene for the purpose of collecting the amount of their lien, they may be set aside."

In their pleadings, the interveners alleged the foregoing facts, and further alleged that the proceedings in South Dakota were all without their knowledge or consent. They further alleged that, at the time of the settlement in South Dakota, interveners had an attorney's lien on the several causes of action for services and necessary expenses incurred. The prayer was for judgment against defendants in the sum of $1,775 for

services as attorneys, and for $220.35 for expenses.

The defendants in their pleading alleged that the proceedings in South Dakota leading up to the judgments were all regular; that the judgments and satisfactions thereof were valid; that said judgments were entitled to full faith and credit in the courts of South Dakota and in the United States District Court of Minnesota; that said judgments in South Dakota merged the causes of action sued upon; that said causes of action no longer existed; and that defendants had never been served with notice of an attorney's lien by interveners.

The case came on for trial on November 1, 1929, and it was stipulated in writing that the intervention in the three cases should be consolidated as a cause in equity, and heard as a cause in equity; that a jury should be waived, and the matter proceeded with as if the cause was originally brought on the equity side of the court, and it was then ordered by the court to be transferred from the law to the equity side.

Trial was had, and a decree was rendered December 31, 1929, in favor of the interveners and against the defendants as follows:

"These causes came on to be heard at a term of this court held on the first day of November, 1929, and were tried as a single action in equity, pursuant to a stipulation of the parties, and thereupon, upon consideration thereof, the court duly filed its decision and order for a decree. Pursuant to said decision and order,

"It is Ordered, Adjudged and Decreed as follows:

"That the interveners have and recover against the defendants herein the total sum of $1101.56 and interest thereon at the rate of six per cent. per annum from the 11th day of October, 1927, together with their costs and disbursements in connection with the proceedings in intervention."

The present appeal is from said decree.

One of the contentions of the defendants is that the South Dakota judgments constituted mergers of the causes of action, and that the attorneys' liens ceased to exist when the causes of action became merged in the judgments.

An examination of the character of an attorney's lien in Minnesota is necessary. The Minnesota statute providing for attorneys'

liens, so far as here material, is set out in the margin.[1]

This statute, first enacted in Minnesota by the territorial Legislature in 1851, appears in the General Statutes of 1866 (chapter 88, § 15) and in the subsequent General Statutes of 1878 (chapter 88, § 16) and 1894 (section 6194) with only minor verbal changes.

As originally enacted, the statute contained four subdivisions, being in substance the same as the present subdivisions 1, 2, 4, and 5.

In the Revised Laws of 1905, a new subdivision 3 was introduced, reading: "Upon the cause of action from the time of the service of the summons therein." Section 2288.

The remainder of the present subdivision 3 and subdivision 6 were added by chapter 98 of the General Laws of Minnesota for 1917.

There are to be found many cases in the Minnesota reports involving this statute, extending from volume 1 down to the present time. These cases may be divided into two groups: Those involving the statute as it existed prior to the taking effect of the Revised Laws, 1905, which contained the provision for a lien upon the cause of action; and those which involve the statute subsequent to the introduction of that provision.

In the earlier group of cases, the Supreme Court of Minnesota held: First, that the statute was "a remedial one, and to be 'largely and beneficially construed in advancement of the remedy,' so as to secure and protect, and not defeat, the rights and objects intended by its provisions" (Crowley v. Le Duc, 21 Minn. 412, 414, cited with approval in Farmer v. Stillwater Water Co., 108 Minn. 41, 121 N. W. 418; and in Desaman v. Butler Bros., 118 Minn. 198, 136 N. W. 747, Ann. Cas. 1913E, 642); second, that the statute, prior to the taking effect of the Revised Laws 1905, created no lien on the cause of action (Hammons v. Great Nor. R. Co., 53 Minn. 249, 54 N. W. 1108; Anderson v. Itasca Lumber Co., 86 Minn. 480, 91 N. W. 12, 291; Nielsen v. City of Albert Lea, 91 Minn. 388, 98 N. W. 195; Boogren v. St. Paul City Railway Co., 97 Minn. 51, 106 N. W. 104, 3 L. R. A. [N. S.] 379, 114 Am. St. Rep. 691; Farmer v. Stillwater Water Co., supra), and only a prospective lien as to "money in the hands of the adverse party" until verdict or order for judgment was entered (Anderson v. Itasca Lumber Co., supra); third, that notice was necessary in order to establish a charging lien under the statute (Dodd v. Brott, 1 Minn. 270 [Gil. 205], 66 Am. Dec. 541; Forbush v. Leonard, 8 Minn. 303 [Gil. 267]; Henry v. Traynor, 42 Minn. 234, 44 N. W. 11; Nielsen v. City of Albert Lea, supra); fourth, that plaintiff had a right to make settlement with defendant before verdict or order for judgment, even though the intent of defendant was to deprive the attorney of plaintiff of his fees and disbursements (Boogren v. St. Paul City Railway Co., supra); fifth, that, if the attorney had, however, once established his lien, he could proceed in the same case to enforce it, even though the cause of action had meanwhile been settled (Weicher v. Cargill, 86 Minn. 271, 90 N. W. 402; Farmer v. Stillwater Water Co., supra).

The Revised Laws 1905 of Minnesota, containing the provision for an attorney's lien upon the cause of action, though approved April 18, 1905, did not become effective until March 1, 1906.

In the case of Northrup v. Hayward, 102 Minn. 307, 113 N. W. 701, 702, 12 Ann. Cas. 341, it was held that the provision giving an attorney a lien on the cause of action did not

---

[1] General Statutes of Minnesota, 1923.

"5695. *Lien for attorneys fees extended*—An attorney has a lien for his compensation whether the agreement therefor be express or implied:

"1. Upon the papers of his client coming into his possession in the course of his employment.

"2. Upon money in his hands belonging to his client.

"3. Upon the cause of action from the time of the service of the summons therein, or the commencement of the proceeding, and upon the interest of his client in any money or property involved in or affected by any action or proceeding in which he may have been employed, from the commencement of said action or proceeding, and, as against third parties, from the time of filing the notice of such lien claim, as provided in this section.

"4. Upon money or property in the hands of the adverse party to the action or proceeding in which the attorney was employed, from the time such party is given notice of the lien.

"5. Upon a judgment, and, whether there be a special agreement as to compensation, or whether a lien is claimed for the reasonable value of the services, the lien shall extend to the amount thereof, from the time of giving notice of his claim to the judgment debtor, but this lien is subordinate to the rights existing between the parties to the action or proceedings.

"6. The liens provided by subdivisions 3, 4 and 5 of this section may be established, and the amount thereof determined, by the court, summarily, in the action or proceeding, on the application of the lien claimant or of any person or party interested in the property subject to such lien, on such notice to all parties interested therein as the court may, by order to show cause, prescribe, or, such liens may be enforced, and the amount thereof determined, by the court, in an action for equitable relief brought for that purpose.

"Judgment shall be entered under the direction of the court, adjudging the amount due and the sale of the property subjected to the lien, or some part thereof, to satisfy said amount, and directing the sheriff to proceed to sell the same according to the provisions of law relating to the sale of real estate on execution, and to make report to the court. • • •"

apply to actions brought prior to the time when the new statutes took effect. The court took occasion to discuss the change in the law made by the Revised Laws of 1905. The court said:

"Attorney's liens are divided into two classes, 'possessory' and 'charging.' The first exists at common law, and extends to all property in the possession of the attorney with respect to which he renders services to the owner. The lien is divested, as in other cases of similar liens, upon the surrender of possession of the property to the owner. The other class, the 'charging' lien, is a statutory creation, and was unknown to the common law. It was created by subdivisions 3 and 5, above set out, and extends to all money or property of the client, including judgments, with reference to which the attorney's services were rendered, and is perfected when notice thereof is given the debtor. Prior to the adoption of the Revised Laws of 1905, this lien did not extend to the cause of action, but only to judgments recovered or money paid, or agreed to be paid as a result of the attorney's services. Boogren v. St. Paul City Ry. Co., 97 Minn. 51, 106 N. W. 104, 3 L. R. A. (N. S.) 379, 114 Am. St. Rep. 691. The provisions of subdivision 3, giving an attorney a lien upon the cause of action of his client from the time of the service of summons, first became the law of this state by the adoption of the Revised Laws of 1905; but, unlike subdivision 5, no notice of the attorney's claim is required to be given the opposite party."

But, though the court held that the attorney did not have a lien on the cause of action under the new statutes, yet it held that he did have a lien on the judgment under the old statutes, and, in reference to notice, the court said:

"But we are clear that, under the facts disclosed by the record and found by the trial court, respondent had a valid lien under the fifth subdivision, and the learned trial court was entirely right in the order appealed from. That statute provides that an attorney shall have a lien upon a judgment recovered by him to the extent of his agreed compensation from the time notice thereof is given to the judgment debtor. The statute creates the lien, and makes its validity, as against the judgment debtor, conditional upon notice to him of its existence. No special form of notice is required, or that it be given or served in any particular manner. The object of the notice is to protect the judgment debtor, and any notice which will serve that purpose must be held sufficient.

"A similar statute is in force in many of the states, and it is generally held that where the judgment debtor has actual notice of the lien or claim of the attorney, and in some states where he has notice of facts sufficient to put a prudent person upon inquiry, it is sufficient to protect the rights of the attorney. * * *

"* * * Notice in fact of the debtor's claim is all that the Legislature intended to require for perfecting the lien, and actual notice, whether written or verbal, answers every purpose of the statute."

In the group of cases decided after the Revised Laws 1905 took effect is Desaman v. Butler Bros., 114 Minn. 362, 131 N. W. 463, 464, second appeal, 118 Minn. 198, 136 N. W. 747, Ann. Cas. 1913E, 642. The court, on the first appeal, in construing the statute said:

"We hold that, under subdivision 3, § 2288, Revised Laws of 1905, an attorney has a lien upon the cause of action of his client from the time of the service of the summons. This lien exists until it is satisfied or released, and does not vanish when the verdict is rendered. The statute does not require that notice of this lien be given to the opposite party or to his attorneys."

In many cases it has been held that settlement may be made by plaintiff and defendant notwithstanding the attorney's lien, but that defendant will be liable to the attorney for amount of the lien if settlement is made in disregard of the attorney's rights of which defendant is bound to take notice. Davis v. Great Northern Ry. Co., 128 Minn. 354, 151 N. W. 128; Georgian v. M. & St. L. R. Co., 131 Minn. 102, 154 N. W. 962; Holloway v. Dickinson, 137 Minn. 410, 163 N. W. 791; Nelson v. Berkner, 140 Minn. 504, 167 N. W. 423; Kubu v. Kabes, 142 Minn. 433, 172 N. W. 496, 497; Wildung v. Security Mortgage Co., 143 Minn. 251, 173 N. W. 429, 430; Scharmann v. Union Pacific Ry. Co., 144 Minn. 290, 175 N. W. 554; Miner v. C., B. & Q. R. Co., 147 Minn. 21, 179 N. W. 483, 484; Miner v. Payne, 150 Minn. 103, 184 N. W. 673; Barnes v. Verry, 154 Minn. 252, 191 N. W. 589, 590, 31 A. L. R. 707; Balluff v. Balluff, 169 Minn. 266, 211 N. W. 462.

In Kubu v. Kabes, the court said: "Clearly there was no waiver on the part of respondent [the attorney]. Defendant was in no way misled. He was charged with notice of the lien * * * and it is immaterial that he paid the amount of the settlement to the plaintiff in good faith. Since he had notice of the lien, he must pay again. * * * Although defendant had the right to make the

settlement without consulting his [plaintiff's] attorney, and there was no purpose or design to defraud the attorney, for his own protection he was bound to guard against a possible second liability on the lien, precisely as he would in a transaction involving mortgaged property. This he could have done by withholding payment until the attorney's lien had been released or discharged."

In Wildung v. Security Mortgage Co., the court said: "In making a settlement, they [defendants] were required to take notice of the lien rights which are given by the statute to attorneys, and for their own protection were bound to guard against a possible second liability under the lien, as they would be if the transaction involved mortgaged property."

In Miner v. C., B. & Q. R. Co., the court said: "The intervener [the attorney] is interested in the original cause of action, by way of subrogation, to the extent necessary to protect his compensation."

In Barnes v. Verry, the court said: "It has long been settled that a party to a cause may not run away with the fruits of his attorney's industry and ability without satisfying the attorney's just demands. The attorney has a lien on the cause of action from the time of the service of the summons. It continues until it is satisfied or released. It is not necessary that notice of the lien be given to the opposite party or his attorneys. They are required to take notice of it."

In the Balluff Case, judgment had been entered and satisfied, yet on application of plaintiffs' attorney the judgment was reinstated and it was adjudged in the trial court that the attorney had a lien upon the cause of action and upon the judgment. This holding was affirmed by the Supreme Court.

The facts in the case at bar, when considered in the light of the provisions of the Minnesota statute and of the Minnesota decisions construing the same, lead clearly to the conclusions that at least up to the time of the entry of the judgments in South Dakota, the appellees, interveners below, had valid liens on the causes of action in the suits pending in the United States District Court for the District of Minnesota; that the liens were of such character that the defendants were bound by constructive notice thereof and service of actual notice was not required; that the liens were of such character that they would continue until discharged or satisfied; that, notwithstanding the existence of the liens, plaintiff and defendants could settle the causes of action, but if, in making such settlement, the rights of plaintiff's attorneys as respects their liens were disregarded, the liens would still exist and could be enforced against defendants; that, if such settlement between plaintiff and defendants was effected by satisfaction of judgments entered, the liens would still exist and the judgments would be reinstated for the purpose of enforcing the liens against defendants.

These conclusions from the Minnesota cases are in accord with decisions from other states. In Tennessee, where the statute provided for an attorney's lien on the cause of action, but did not provide for continuance of the lien after a compromise settlement, or after judgment, the court said in Railroad v. Wells, 104 Tenn. 706, 711, 59 S. W. 1041, 1043: "Since the passage of this act, as before, the plaintiff may prosecute or compromise or dismiss his suit at will, and the defendant is liable only for such sum as may be adjudged or stipulated in the plaintiff's favor. Now, as formerly, the plaintiff's right of action is merged in his judgment, when one is rendered, and in the compromise, when one is made; and the amount specified in the one or in the other is the measure of the defendant's liability. The lien which the statute fixes on the plaintiff's right of action follows the transition, without interruption, and simply attaches to that into which the right of action is merged. If a judicial recovery is obtained, the lien attaches to that; if a compromise agreement is made, the lien attaches to that; and in each case the attorney's interest is such that it cannot be defeated or satisfied by a voluntary payment to his client without his consent."

In New York, where the statute provided for a lien on the cause of action and that the lien should attach to a verdict, report, decision, judgment, or final order, but made no provision as to a compromise settlement, the court said, in Fischer-Hansen v. Brooklyn Heights R. Co., 173 N. Y. 492, 499, 66 N. E. 395, 397:

"The statute is remedial in character, and hence should be construed liberally in aid of the object sought by the legislature, which was to furnish security to attorneys by giving them a lien upon the subject of the action. The common law gave them no lien until the entry of judgment, but the statute gives them one from the commencement of the action. If the claim is prosecuted to judgment, or to a decision upon which judgment may be entered, the lien reaches forward and attaches to that, also. When the claim is thus extin-

guished by merger in a higher security, the statute makes express provision for the transfer and continuance of the lien. When, however, the claim is extinguished by a settlement, the statute does not expressly provide that the lien shall extend to the proceeds, and the precise question before us is whether, in view of the history and object of the act, this is impliedly commanded. Upon common-law principles, the lien on the cause of action follows the proceeds into the hands of the client after payment to him; but as in this case he is irresponsible. it is necessary to determine whether the lien settled upon the fund before the defendant paid it over. Where was the lien during the interval, whether long or short, between the time of coming to terms and the time of payment? The statute says that the lien cannot be affected by any settlement between the parties before or after judgment, but does it mean that no settlement whatever can be made without the consent of the attorney? It clearly means this, unless the lien is impliedly transferred to the proceeds of the settlement. But did the legislature, in its effort to protect attorneys, intend to sacrifice the client by preventing him from making an honest settlement of his own cause of action? Did it intend to overturn the ancient and honored rule of law that settlements are to be encouraged, by giving the attorney power to insist that the litigation must continue until he consents that it should stop? Did it intend to so tie the hands of the client that he could not settle his own controversy without the permission of his attorney? A cause of action is not the property of the attorney, but of the client. The attorney owns no part of it, for a lien does not give a right to property, but a charge upon it. As it is merely incidental, and for the purpose of security only, it would not be reasonable to hold that the legislature intended it should be the means of blocking an honest and genuine adjustment of controversies. We think the lien is subject to the right of the client to settle in good faith, without regard to the wish of the attorney; and we so held in the Peri Case [152 N. Y. 521, 46 N. E. 849], where we declared that 'the existence of the lien does not permit the plaintiff's attorney to stand in the way of a settlement.' The right of the parties to thus settle is absolute, and the settlement determines the cause of action and liquidates the claim. This necessarily involves the reciprocal right of the attorney to follow the proceeds of the settlement, and, if they have been paid over to the client, to insist that his share be ascertained and paid to

him, for the defendant is estopped from saying that with notice of the lien he parted with the entire fund. * * *

"Moreover, the general rule is that a lien upon property attaches to whatever the property is converted into, and is not destroyed by changing the nature of the subject. Thus a lien upon timber ordinarily extends to the shingles made out of it; a lien upon domestic animals, to their young subsequently born; and a lien upon a mortgage, to the land into which the mortgage is converted by foreclosure. It follows its subject, and cannot be shaken off by a change of form or substance. It clings to any property or money into which the subject can be traced, until it reaches the hands of a bona fide purchaser. So a lien upon a claim or a cause of action follows the fund created by a settlement of the claim, which thereupon ceases to exist. It attaches to the amount agreed upon in settlement the instant that the agreement is made, and, if the defendant pays over to the client without providing for the lien of the attorney, he violates the rights of the latter, and must stand the consequences. We think that the plaintiff had a lien upon the sum which the defendant agreed to pay to extinguish the cause of action, and that the law will not permit it to say that it has nothing in its hands to satisfy it. The lien was not affected by the adjustment, but leaped from the extinguished cause of action to the amount agreed upon in settlement."

And in Fenwick v. Mitchell, 34 Misc. Rep. 617, 70 N. Y. S. 667, the court said at page 670: "The lien does not prevent an honest settlement by the parties, though; and if they settle, and thereby extinguish the cause of action, the lien is carried along to the sum agreed upon in settlement, the same as it is carried along to the judgment where there is one. This is all that is meant by the provision that the lien cannot be affected by a settlement; for as we have seen by the Peri Case the right of the parties to settle is still absolute. The cause of action by the settlement merges in the amount agreed upon in settlement."

In New Jersey, where the statute is similar to the statute of New York, the court said, in Ferraro v. City Hall Garage, 94 N. J. Law, 209, 210, 109 A. 358:

"The plain meaning of the act is, that the attorney shall have a lien on his client's cause of action, and that a settlement of it by the client without his attorney's consent shall not have the legal effect to extinguish the cause of

action, but shall leave it open to the extent that the attorney may proceed to collect against the defendant whatever sum, after a judicial inquiry and hearing, shall be found to be fair and reasonable.

"* * * The statute does not prevent the litigants from settling their difficulties between themselves. They are at liberty to do so if they see fit. But when litigants undertake to settle their matters in dispute they must take notice that their controversy has been made the subject of judicial inquiry and action and that any lien or right which has accrued thereby to the plaintiff's attorney, by the statute, cannot be defeated by their action."

Under the Minnesota decisions, it does not clearly appear whether, in case of a compromise settlement, the cause of action is considered as merged, and the attorney's lien considered as following the proceeds, as in New York; or the cause of action is considered as still left open with the lien attaching, as in New Jersey. Under these circumstances, we express no opinion on the question. The matter of vital importance is that the lien continues, whichever theory is adopted.

Effect of the South Dakota Judgments.

It is contended by defendants that, though the status in Minnesota of interveners' liens was as above stated, yet that the entry of the judgments in South Dakota and satisfaction of the same destroyed such status by merging the causes of action in the judgments, and thereby taking away the basis for such liens, that the trial court in Minnesota erred in setting aside the judgments of dismissals in the Minnesota actions and reinstating the actions, and allowing plaintiff's attorneys to intervene for the purpose of establishing and enforcing their liens, and that in so holding the trial court failed to give full faith and credit to the judgments entered in South Dakota.

There are several answers to these contentions. In the first place, the appellees were not parties to the South Dakota litigation, and the judgments there entered were not binding upon and did not purport to affect the rights of appellees. Further, the doctrine of merger of a cause of action in the judgment entered thereon will not be carried any further than the ends of justice require. 34 C. J. p. 754; 15 R. C. L. p. 782 et seq.; 2 Freeman on Judgments (5th Ed.) § 550 et seq.; Cutler Hardware Co. v. Hacker, 238 F. 146 (C. C. A. 8), and cases, cited; Gould v. Svendsgaard, 141 Minn. 437, 170 N. W. 595; State ex rel. v. Citizens' State Bank, 115 Neb.

593, 214 N. W. 6, 9; Turner v. Stewart, 51 W. Va. 493, 41 S. E. 924; Huber v. Brown, 148 Ill. App. 399, 407. Still further, the South Dakota judgments and satisfactions did not, ipso facto, terminate or affect the suits in Minnesota. The South Dakota judgments were simply matters which could be pleaded as matters of defense in the Minnesota suits. They were so pleaded; but even then, it was the right and duty of the Minnesota court to take such steps as would protect the rights of all parties to the Minnesota suits, and also the rights of the attorneys of record in those suits. Such steps were accordingly taken: the rights of plaintiff and defendants touching recovery in the actions had been settled by the South Dakota judgments; full faith and credit were accorded to those judgments in adjudicating dismissals of the Minnesota actions so far as concerned plaintiff's right of recovery against defendants; the right of plaintiff's attorneys to establish and enforce their liens was litigated by an intervention in the Minnesota actions in accord with the Minnesota practice. We think this intervention proceeding was in no sense a collateral attack upon the South Dakota judgments, and did not detract from the full faith and credit to which said judgments were entitled. So far as the rights of plaintiff's attorneys were concerned, the South Dakota judgments were in substance and effect simply a compromise and settlement of plaintiff's causes of action against defendants.

The journey of plaintiff and defendants' claim agent to South Dakota, the bringing of the actions there, and the entry of judgments and satisfactions thereof in that jurisdiction were steps taken with a purpose of avoiding settlement and discharge of the liens of plaintiff's attorneys in the Minnesota actions.

The offering of the South Dakota judgments in the intervention proceeding was for the same purpose. The use sought to be made of the South Dakota judgments was one that was inequitable and contrary to good conscience. A court of equity will not sanction, but will prevent, such use. See 3 Freeman on Judgments (5th Ed.) §§ 1178, 1182, 1188, 1402; 34 C. J. pp. 432, 433, 444; Seay v. Hawkins, 17 F.(2d) 710, 715 (C. C. A. 8), and cases cited; Gray v. Richmond, etc., Co., 167 N. Y. 348, 60 N. E. 663, 82 Am. St. Rep. 720; note, 32 L. R. A. (N. S.) 905.

We think the trial court committed no error in holding that the liens in Minnesota were not destroyed by the South Dakota judgments.

A further contention of defendants is that the court was not authorized to include in the decree any expenses incurred by plaintiff's attorneys in connection with the litigation in the Minnesota courts. The court allowed items amounting to $268.23. We think the items were properly allowed. The term "compensation" in the statute providing for attorneys' liens has been given a liberal construction, and such items have been allowed in numerous instances. Crowley v. Le Duc, supra; Desaman v. Butler Bros., supra; Davis v. Great Northern Ry. Co., supra; Georgian v. M. & St. L. R. Co., supra; Balluff v. Balluff, supra.

Other questions raised by appellants have been considered, but do not require discussion.

The decree is affirmed.