LEONARD W. GAMMONS v. G. GULBRANSON.

November 13, 1899.

Nos. 11,748—(116).

| 78 | 21 |
| f82 | 264 |
| 82 | 265 |

## Attorney at Law—Barratry.

*Held*, following Gammons v. Johnson, 76 Minn. 76, that a general scheme to work up and instigate litigation in the names of persons and concerning subjects to whom and to which the parties to the scheme were entire strangers, and in which they had no interest except a speculative one in the pecuniary profit which they might derive from the litigation which they have instigated, is barratrous, and against public policy.

### Same—Services—Quantum Meruit.

A party to such an illegal scheme will not be permitted to obtain the benefit of the litigation which he thus instigated by abandoning the original express contract and suing on a quantum meruit for services rendered in the litigation.

### Same.

It is not material at what time a person becomes a party to such an illegal scheme. If he becomes a party to it at any stage of its execution, he will, in contemplation of law, be deemed to have been a party to it from its inception.

### Same—Evidence.

The evidence is conclusive that plaintiff, if not a party to such a scheme at its inception, subsequently became such.

Action in the district court for Otter Tail county to recover $50 for services as attorney at law. The case was tried before Baxter, J., and a jury, which rendered a verdict in favor of plaintiff for $39.08; and from an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*J. W. Mason*, for appellant.

*L. W. Gammons*, pro se.

MITCHELL, J.

This action was brought by plaintiff to recover for his services as an attorney at law in a suit brought by the defendant against the Great Northern Railway Company to recover damages for its failure to fence its road through defendant's farm. The complaint is so drawn as to admit of a recovery either under a written contract between plaintiff and defendant, executed May 14, 1896, or, that failing, upon a quantum meruit. The written contract was, in all its material provisions, substantially the same as the one considered by this court in Huber v. Johnson, 68 Minn. 74, 70 N. W. 806.

The defendant set up in his answer, and on the trial introduced evidence to prove, substantially the same facts which were alleged and offered to be proved by the defendant in Gammons v. Johnson, 76 Minn. 76, 78 N. W. 1035, to wit, that the suit against the Great Northern Railway Company was the result of an illegal and bar-

ratrous conspiracy and scheme entered into between plaintiff and one Huber to work up and instigate wholesale vexatious litigation in the names of parties and concerning subjects to whom and to which they were entire strangers, and in which they had no interest except a speculative one in the pecuniary profit which they might derive from the litigation which they had thus instigated; also that the subsequent contract between plaintiff and defendant set up in the complaint was merely in continuation and furtherance of the original unlawful scheme of plaintiff and Huber. Without objection by either party, the court instructed the jury, as a matter of law, that the original contract between Huber and the defendant was void, as being champertous, and against public policy. In view of the defense set up in the answer, this instruction must have been given under the doctrine of Gammons v. Johnson, supra, and the sufficiency of the evidence to justify the instruction is not questioned.

The court further instructed the jury that, if plaintiff was a party to, or connected with, that illegal scheme, he could not recover in this action. This instruction was not only not excepted to, but was good law; for, as was said in Gammons v. Johnson, supra, where the illegality of the conduct of a party enters into the very inception of a scheme by which the litigation itself is illegally instigated, even if the illegal express contract is set aside or ignored, this original vice in the scheme still exists; and a party to it cannot purge his conduct, and obtain the benefit of the litigation which he has thus unlawfully instigated, by ignoring the original special contract, and suing on a quantum meruit. Neither could he accomplish that result by attempting to abandon the original contract, and make a new one in furtherance of the unlawful scheme. Nor would it make any difference when a person became a party to such an illegal scheme. If he became a party to it at any stage of its execution, he would, in contemplation of law, be a party to it from its inception. Hence the only question submitted to the jury (without objection by either party) was whether plaintiff was a party to, or connected with, this illegal "Huber scheme," so called. The verdict being for the plaintiff, the jury must have found in the

negative; and the only question on this appeal is whether the evidence justified the verdict.

After very careful consideration the majority of the court are of opinion that the evidence was conclusive against the verdict. The plaintiff testified, in substance, that he was not a party to the procuring of these Huber contracts. As already suggested, this, even if true, would not be material if he subsequently became a party to the illegal scheme. The admitted or undisputed facts and circumstances are overwhelmingly against the plaintiff. He admits that Huber brought to him 71 of these contracts, all alike except the names of the parties of the second part, for the purpose of his bringing suits on them; that he had never seen any of these 71 parties, or had any previous communication with them; that his employment was with Huber, "seeming to act as their agent." Under this employment he brought 71 suits, using, in part at least, printed blank complaints which he had previously used in similar suits in another part of the state. His arrangement with Huber was that he was to have, as contingent fees, half of the contingent fees which Huber was to receive, which was 50 per cent. of the amounts recovered. These Huber contracts were apparently on printed blanks. The claims or causes of action, if any, of these 71 parties of the second part, were in no way connected with each other. Each party had his own separate and independent claim. The character of the parties, and the distance of their respective farms from each other, tended very strongly to negative the idea that there was any concert of action between them to prosecute their claims against the railroad company.

It is impossible to conceive that, under these circumstances, an experienced attorney could fail to understand that these contracts were the result of a systematic scheme on the part of Huber to work up and instigate wholesale litigation for mere speculative purposes. After the decisions of this court in Huber v. Johnson, supra, and Gammons v. Johnson, supra, and evidently because of them, the plaintiff, so far as he could, obtained new contracts from these 71 parties running to himself instead of Huber, and so nearly identical, both in terms and language, with the Huber contracts, as to indicate that the same printed blanks were used in both. The very

terms of these new contracts show that they were, and must have been intended to be, mere substitutes for the original Huber contracts. Huber himself was a party to this substitution; if not actively participating in it, at least consenting to it. It was evidently fully understood and agreed upon by both plaintiff and Huber. The same person who had acted as agent to procure the original contracts running to Huber was employed as agent to procure the new contracts running to plaintiff. Other facts and circumstances might be referred to, but what has been stated is, in our opinion, sufficient to show conclusively that plaintiff was cognizant of and a party to the Huber scheme, at least from the time that Huber brought the contracts to him for the purpose of having suits brought.

The order appealed from is reversed, and the cause remanded to the court below, with directions to order judgment in favor of the defendant notwithstanding the verdict.

START, C. J.

The general principles of law and ethics laid down in the majority opinion are correct and salutary, and they ought to be vigorously enforced in practice. I concede that the preponderance of the evidence on the issue submitted to the jury was in favor of the defendant, but I dissent from the proposition that it was, as a matter of law, conclusive.

BUCK, J. (dissenting).

I dissent. There is nothing in this case to show that the jury were in any manner swayed or influenced, in rendering their verdict, by prejudice, passion, or any improper motive. A fair trial was had. The jury found a verdict in favor of plaintiff, and the trial judge refused to grant a new trial, thus adding his own judgment to the verdict of the jury that the weight of evidence was on the side of the plaintiff, Gammons. The latter testified that he had nothing to do with the champertous contract involved in the action, and no impeaching testimony was introduced as to his reputation for truth and veracity. At most, the evidence was conflicting, but the majority opinion utterly ignores the familiar rule that in such case great weight should be given the opinion of the trial court in weigh-

ing the evidence and passing upon the weight of evidence. I think that the decision of the majority practically results in a trial of the facts by this court instead of the jury. But this appellate court has no such right, and should not weigh the evidence where there is a substantial conflict, and especially it should not disturb the order of the lower court in refusing a new trial in this case. The functions of the two courts in this respect are well understood. The trial court may weigh the conflicting evidence; the appellate court may not do so, in the ordinary meaning of that word. It is only when the evidence is so conclusively or manifestly and palpably one way or the other that the appellate tribunal is justified in interfering. In my opinion, this is not such a case, and I think the verdict of the jury should stand.

Champerty and barratry are serious charges to make against an attorney of this court; and where he positively denies such charges, and in that denial is sustained by a jury of his country and the opinion of the trial court, after a full and fair trial, I am not willing, upon such evidence as appears in this case, to yield my assent to the conclusion arrived at in the majority opinion. Highly as I disapprove of acts of champerty and barratry, I feel that an attorney ought not to suffer from the injustice implied in the reversal of this verdict upon the grounds stated, hence I think that the order of the trial court should be affirmed. See Foot v. Mississippi & R. R. Boom Co., 70 Minn. 57, 72 N. W. 732, in which it was held that, where some evidence supports a finding it will not be disturbed, though the evidence as a whole preponderates against it. And in Moran v. Small, 68 Minn. 101, 70 N. W. 850, it was held that findings of fact not against the overwhelming weight of evidence will not be disturbed.