HIGHTOWER *v.* DETROIT EDISON CO.

APPEAL OF TOLONEN.

1. STATUTES—CONSTRUCTION—CRIMINAL LAW.

Rule of strict construction confines offense to words of statute, but it permits words not only to be read naturally but to be given meaning in harmony with purpose and intent of law as far as may be done without distortion of language.

2. CHAMPERTY AND MAINTENANCE—SOLICITING PERSONAL INJURY CLAIMS—ATTORNEY AND CLIENT—AMBULANCE CHASING—STATUTES.

Purpose of Act No. 328, Pub. Acts 1931, § 410, prohibiting solicitation of personal injury claims, is to discourage practice commonly known as "ambulance chasing," with its attendant evils.

3. SAME—INDIRECT SOLICITATION.

Soliciting great-aunt for grandniece's personal injury claim is "indirect" solicitation within condemnation of statute (Act No. 328, Pub. Acts 1931, § 410), regardless of their legal status, where great-aunt had control of person and cause of action of grandniece, and therefore contract between solicitor and great-aunt, who was later legally appointed to represent grandniece, is void.

4. ATTORNEY AND CLIENT—RIGHTS AND DUTIES.

Rights and duties arising out of relationship of attorney and client are not measured by yardstick of commercial or trade transactions, but relation is purely personal, lawyer owes to client undivided allegiance, and there is no place in relationship for its establishment by middleman having interest in *res* or control of procedure.

5. SAME—PRINCIPAL AND AGENT—VOID CONTRACT—NOTICE.

If relationship of attorney and client is established or initiated by middleman, attorney is so far agent of middleman as to be

* Continued from Vol. 261.

chargeable with knowledge of all arrangements under which middleman assumes to act, and if he acts under void contract, attorney may acquire no rights thereunder.

6. SAME—CHAMPERTY AND MAINTENANCE—LIEN FOR FEES.

Attorney, who was engaged by middleman to prosecute personal injury claim secured by solicitation in violation of Act No. 328, Pub. Acts 1931, § 410, was properly denied lien on judgment obtained in said case, since contract was illegal.

7. SAME—RIGHT TO RECOVER VALUE OF SERVICES.

Attorney, who was engaged by middleman to prosecute personal injury claim secured by solicitation in violation of statute, did not establish *bona fide* relationship of attorney and client by having personal consultation with client, where he continued to recognize fact that he owed some duty to middleman, and therefore is not entitled to recover fair value of work done independent of lien on judgment obtained.

8. SAME—BURDEN OF PROOF—FEES.

Burden of proof of right to fees for services is on attorney claiming them.

9. SAME—CHAMPERTY AND MAINTENANCE—CRIMINAL LAW—STATUTES.

No recovery on *quantum meruit* may be had for services performed by attorney under contract which was wholly void because in violation of criminal statute designed, among other purposes, to prevent champerty and maladministration of justice (Act No. 328, Pub. Acts 1931, § 410).

10. SAME—FUNCTIONS OF ATTORNEY—ILLEGAL PRACTICE OF LAW.

In case in court, determination of steps to be taken and control of procedure and proceedings to enforce remedy are exclusive functions of attorney at law, where party does not appear in his own person, so that layman who exercises such functions, as well as performing other acts which are usually done by attorney, is engaged in illegal practice of law.

11. SAME—ILLEGAL PRACTICE OF LAW—FRAUD ON COURT.

Attorney's representation in court of one engaged in illegal practice of law was not only breach of professional ethics and standards, of duty to client, and in violation of law, but was also fraud on court, going directly to integrity of relationship between bench and bar and to heart of orderly administration of justice.

12. SAME—AWARD FOR FEES.

> Judgment of court will not be given in aid of or to encourage unprofessional conduct infringing integrity of judicial proceedings, and therefore will not award fees to attorney for services rendered under illegal contract in case which amounted to fraud on court.

Appeal from Wayne; Reid (Neil E.), J., presiding. Submitted January 17, 1933. (Calendar No. 36,915.) Decided March 1, 1933.

Action by Minnie Lee Clark Hightower, by next friend, against Detroit Edison Company, a New York corporation, for personal injuries alleged to be due to defendant's negligence. On petition of Jacob A. Tolonen for attorney fees. Petition denied. Petitioner appeals. Affirmed.

*Jacob A. Tolonen, in pro. per.*

*George E. Brand, amicus curiæ.*

FEAD, J. May 5, 1932, plaintiff, seven years old, was injured by defendant's truck. For about four years she had been living with and was supported by her great-aunt, Mrs. Mable Powell. Mrs. Powell took her because her mother, who lived in Alabama, had not cared for her properly.

A few days after the injury Mrs. Powell was solicited by one Bailey, a representative of J. C. Donohue, who conducts business under the name of the Michigan Accident Claims Company, to place the accident claim with Donohue. He told her suit would be commenced. He also said Donohue was a lawyer. The next day she signed papers in Donohue's office, but their contents are not disclosed. Donohue's brother is associated with him, and it was also represented to Mrs. Powell that he had been admitted to practice.

June 2d, suit was commenced by summons, with Roscoe C. Griffith as attorney for plaintiff, and

Mrs. Powell as next friend. Declaration was filed June 14th, with notice that Griffith claimed lien for his services on settlement, recovery, or judgment. Mrs. Powell never talked with Griffith. The declaration was prepared by a stenographer in Donohue's office, examined by Griffith, and then filed. It had no *ad damnum* clause, which indicates the character of Griffith's employment and inspection. Griffith immediately executed blank substitution of attorney to be kept in Donohue's files. It was executed in blank because Donohue had three or four attorneys who tried such cases for him, and he did not then know which would be chosen. Donohue, not the client, named the trial attorney. Griffith's connection with the case ceased at this point. The procedure was routine, under which Griffith had handled a large number of cases for Donohue. Griffith did not try the cases he so commenced. In a few instances he presented a motion, sought appointment of guardian or administrator, or took consent judgment, but Donohue settled most of the cases himself, and Griffith merely took judgments for such amounts as Donohue told him. Griffith was paid each Saturday by Donohue for the work done during the week.

Appellant Tolonen, an attorney, tried many of Donohue's cases, beginning late in 1930 or early in 1931. He claims he set his own fee, in all cases talked with the clients, and rejected some cases offered him because something put him on guard, but refused to give the reason for the rejection, as privileged communication between attorney and client. He declined to say whether it was solicitation. He considered that both the party to the suit and Donohue were his clients. He relied on Donohue, at least morally, to see that his fee was paid. He had heard that Donohue had solicited personal injury claims,

and he once represented Donohue in an action involving an alleged solicited claim. He was usually employed through a telephone call from Donohue's office. In case of settlement or payment of judgment to him, he would take out his fee, obtain receipt from the client in full, and lay the balance on the table in Donohue's office in the presence of both Donohue and the client. He assumed that Donohue was collecting fees in the cases he tried.

July 20th, on telephone call from Donohue's office, appellant was employed to procure the appointment of Mrs. Powell as plaintiff's guardian. The appointment was made September 14th. Appellant had not then been employed to try plaintiff's case. He was engaged a few days later by Donohue's brother, who informed him that $400 had been offered in settlement. Appellant negotiated a settlement for $600. September 21st he saw Mrs. Powell, and she approved the settlement. She asked his fees, and he said the court would set them. The next day the case came on for trial. The purpose was to take consent judgment on the basis of the compromise. Plaintiff being an infant, the court had the duty to investigate the fairness of the settlement. Appellant was a little late at the trial, and before he arrived Mrs. Powell had told the court that the claim had been solicited.

When appellant appeared, he presented substitution of attorney, signed by Griffith, dated the preceding day, and still blank as to name of attorney to be substituted. He received it from Donohue. The court notified the Detroit Bar Association of Mrs. Powell's claim of solicitation, and Mr. George Brand, its representative, appeared as *amicus curiæ*. The court entered consent judgment for plaintiff for $600. Mrs. Powell filed motion for substitution of

Charles J. DeLand as attorney for plaintiff in place of Roscoe C. Griffith, prayed that the court determine the amount due Griffith and appellant and the lien of either on the cause of action or judgment, and objected to allowance of lien or fees to either. October 3d, the court made an order substituting DeLand as attorney for plaintiff, subject to determination of appellant's fees. Answers, supplemental motion, and affidavits were filed and testimony was taken. October 8th the court denied Griffith and appellant any fees or lien on the grounds that the claim had been solicited in violation of statute (Act No. 328, Pub. Acts 1931, § 410), and that Donohue was illegally practicing law through Griffith and appellant. The appeal is from disallowance of the fee.

Appellant has been so frank in his testimony and fair in his brief that we are prompted to give full credit to his claim of honest intent. He was not wholly Donohue's servant, but maintained an attitude of ostensible independence and insisted upon personal contact with clients. It was not shown that he took any other solicited case. He knew, or had ample information to cause him to suspect, that Donohue solicited personal injury claims. But we think he might have refused a case if he actually had known Donohue had solicited the claim. Mrs. Powell did not inform him that the instant claim had been solicited, nor did he make inquiry of her. The issue is whether, although appellant felt he conducted himself with propriety, he mistook his duties as an attorney and may be denied a fee.

Was plaintiff's claim for damages solicited by Donohue in violation of Act No. 328, Pub. Acts 1931, chap. 60, § 410:

"Any person, firm, copartnership, association, or corporation or any of the officers, agents, servants,

or employees of any such person, firm, copartnership, association, or corporation, who shall directly or indirectly, individually or by agent, servant, or employee, solicit any person injured as the result of an accident, his administrator, executor, heirs, or assigns, for the purpose of representing such person in making claim for damages or prosecuting any action or causes of action arising out of any personal injury claim against any other person, firm or corporation, shall be guilty of a misdemeanor, and any contract entered into as a result of such solicitation shall be void: *Provided, however,* That nothing herein shall affect an unsolicited contract entered into by any person, firm or corporation with an attorney duly admitted to practice law in this State.''   •

The act is constitutional. *Kelley* v. *Judge of Recorder's Court,* 239 Mich. 204 (53 A. L. R. 273).

Appellant, invoking the rule of strict construction of penal statutes, contends the act does not apply, because Mrs. Powell, the person actually solicited, was not the person injured nor her administrator, executor, heir, or assign.

The rule of strict construction confines an offense to the words of the statute, but it permits the words not only to be read naturally but to be given a meaning in harmony with the purpose and intent of the law as far as may be done without distortion of language. *Deloria* v. *Atkins,* 158 Mich. 232, 241; *People* v. *Gould,* 237 Mich. 156, 163; 2 Lewis' Sutherland on Statutory Construction (2d Ed.), § 528 *et seq.;* 59 C. J. p. 1113 (§ 660).

The purpose of the act is to discourage the practice commonly known as ''ambulance chasing.'' The practice has developed recognized evils, the major of which are, (1) fomenting litigation with resultant burdens on the courts and public purse, (2) subornation of perjury, (3) mulcting of innocent persons by judgments, upon manufactured causes of action and

perjured testimony, and by settlements to buy peace, and (4) defrauding of injured persons having proper causes of action, but ignorant of legal rights and court procedure, by means of contracts which retain exorbitant percentages of recovery and illegal charges for court costs and expenses and by settlements made for quick return of fees and against the just rights of the injured persons.

The words of the statute must be read in the light of the evil to be cured. With the purpose in mind, we cannot examine the statute from the viewpoint that it was not intended to cover solicitation of claims of injured infants who have no power to contract. The offense is solicitation for the forbidden purpose. We are not obliged to, nor should we, read into the act words which would add to the offense such elements as actual execution of an agreement, capacity of the injured person to contract or legal control of the party injured by the person solicited. Indirect approach is equally under condemnation of the statute as a frontal attack. The word "indirect" in the statute is not to be confined to intentional subterfuge but is to be given the fair meaning of including any circuitous means to reach the statutory person and obtain control of the claim.

Regardless of her legal status toward plaintiff, Mrs. Powell in fact had control of her person and cause of action. Solicitation of Mrs. Powell was at least indirect solicitation of the person injured, because it necessarily contemplated her arranging with plaintiff, as far as the latter was legally capable of arrangement, for Donohue handling the claim. Moreover, having become successful, by Mrs. Powell's legal appointment to represent plaintiff and Donohue's control of the claim, the solicitation operated upon the person injured within the scope of the statute.

The act applies, and the contract between Mrs. Powell and Donohue was void. Was appellant affected by the invalidity of his claim of fees?

Appellant contends Donohue had the right to handle unsolicited claims (*Kelley* v. *Judge of Recorder's Court, supra,* 214), and that he, appellant, is not chargeable with violation of the statute by Donohue because he had no actual knowledge of solicitation. In the *Kelley Case* the court did not pass upon the general right of a layman to handle unsolicited personal injury claims. It merely said that unsolicited claims were not covered by the statute. Whether their control by a layman is in violation of public policy and the circumstances which would render such control lawful or unlawful are beside the issue here and must be left to a proper case. The case at bar came to appellant from Donohue, as had others. There is ample in the record, by way of former dealings and appellant's information of Donohue's practices and the character of his business, to have put a reasonable person on inquiry and charge him with knowledge that the claim had been solicited. But we do not rest decision on that ground.

The rights and duties arising out of the relationship of attorney and client are not measured by the yardstick of commercial or trade transactions. The relation is purely personal. The lawyer owes to his client undivided allegiance. There is no place in the relationship for its establishment by a middleman having an interest in the *res* or control of the procedure. The fact it is so established or initiated makes the attorney so far the agent of the middleman as to charge him with knowledge of all arrangements under which the middleman assumes to act. If the middleman acts under a void contract, the attorney can acquire no rights thereunder. Lien

on the judgment was properly denied, because claimed under an illegal contract.

But appellant contends that he established the relationship of attorney and client by personal consultation with Mrs. Powell, and under it performed services in good faith, in ignorance that the claim had been solicited, and is entitled to recover the fair value of the work done, independently of lien.

An attorney employed by a middleman cannot close his eyes to the implications of the transaction, claim ignorance of its real character, and demand that his actual knowledge of irregularities be proved. Nor can his character as agent of a middleman be changed to that of independent attorney to his client by the mere sound of words used by the middleman in engaging him, by a colorable consultation with the client, or by going through the ritual of establishing a legitimate connection. As long as the attorney owes, or deems he owes, to the middleman any duty connected with the plaintiff's case so that he cannot extend undivided allegiance to the client, he remains agent of the middleman. If appellant, *bona fide,* had established with Mrs. Powell the relationship of attorney and client, wholly divorced from Donohue, the case would be different. But he did not. He considered Donohue as well as plaintiff his client in the case. He had a duty to Donohue to dispose of the money recovered, had he made recovery, in such a way as would enable Donohue to get his pay on the invalid contract. And with Griffith's claim of lien before him, he made no such natural inquiry of Mrs. Powell as whether Griffith had been paid or whether the lien was for the benefit of Donohue and represented compensation for a solicited claim. While appellant went through some of the forms of establishing the relationship of at-

torney and client with Mrs. Powell, the testimony does not indicate that, if she had told him Donohue had solicited the claim, he would have deemed himself so exclusively her attorney, free from obligation to Donohue, as to advise her that her contract with Donohue was void and she need pay nothing on the judgment thereunder. At most, he might have withdrawn from the case, but such action would have demonstrated superior allegiance to Donohue.

The burden of proof of right to fees for services is on the attorney claiming them. *Boyle* v. *Waters*, 206 Mich. 515; 6 C. J. p. 759. Appellant did not sustain the burden of proving an independent and *bona fide* relation of attorney and client with Mrs. Powell, freed from duty to Donohue and from the infirmities of Donohue's position and contract.

Appellant urges that even though the contract be void, he is entitled to recover on the *quantum meruit* under *McCurdy* v. *Dillon*, 135 Mich. 678, where such recovery was allowed for services performed under a contract for compensation in a divorce suit, void as against public policy. No such recovery can be had at bar because the services were performed under a contract wholly, not partly, void, in violation of a criminal statute (*Cashin* v. *Pliter*, 168 Mich. 386 [Ann. Cas. 1913C, 697]), designed, among other purposes, to prevent champerty and maladministration of justice. *Ingersoll* v. *Coal Creek Coal Co.*, 117 Tenn. 263 (98 S. W. 178, 9 L. R. A. [N. S.] 282, 119 Am. St. Rep. 1003, 10 Ann. Cas. 829); *Gammons* v. *Johnson*, 76 Minn. 76 (78 N. W. 1035); *Gammons* v. *Gulbranson*, 78 Minn. 21 (80 N. W. 779).

It is also contended that appellant is not entitled to fees because he was a party to the illegal practice of the law by Donohue, a layman. It probably

would be difficult to find a plainer case of such illegal practice.

In a case in court, determination of the steps to be taken and control of procedure and proceedings to enforce the remedy are exclusive functions of an attorney at law, where a party does not appear in his own person. 6 C. J. p. 643. Donohue exercised such functions as well as performing other acts which are usually done by the attorney. No more than an enumeration of his acts is necessary.

Personally, or by his lay agents, Donohue assumed to Mrs. Powell to be an attorney; consulted her to ascertain the cause of action; decided when and how suit should be commenced; started suit by summons; determined the form of action; prepared the declaration; attached claim of lien for Griffith's services but for Donohue's benefit; kept control of the action through substitution of attorney in blank; negotiated settlement; authorized plaintiff to take judgment; and, had the court not prevented, would have taken fees out of the judgment, as he had often done in other cases. In fine, Donohue performed all the functions of an attorney in the case except those which he was obliged to commit to a licensed lawyer. The case is much stronger than the following, held illegal practice of law: *In re Otterness,* 181 Minn. 254 (232 N. W. 318, 73 A. L. R. 1319); *In re Eastern Idaho Loan & Trust Co.,* 49 Idaho, 280 (288 Pac. 157, 73 A. L. R. 1323); 73 A. L. R. 1319 *et seq.,* and note, 1327.

That Griffith was merely Donohue's employee is not disputed. While appellant attempted to preserve semblance of the proprieties, it would be a strain on credulity to doubt that he would have obeyed Donohue's order to amend the declaration, seek adjournment, refuse the compromise and go to

trial, or take other action, or, in the alternative, that he would have retired from the case. He received his authority to appear from Donohue, was accountable to him for the recovery, and could not but have recognized that Donohue was in charge.

Appellant's representation of Donohue was not only a breach of professional ethics and standards, of duty to the client, and in aid of violation of law, but was a fraud on the court, going directly to the integrity of the relationship between bench and bar and to the heart of the orderly administration of justice. To say that, although such misconduct may justify disbarment or contempt proceedings, the court must award compensation to an attorney for services tainted thereby would put the court in a position of approving or ignoring gross breach of duty to client and court. Something may be said in favor of denial of fees on the ground that plaintiff could not be forced to pay because appellant was not in fact her attorney. But we lay denial upon the broader ground that the judgment of the court will not be given in aid of or to encourage unprofessional conduct infringing the integrity of judicial proceedings. *Ingersoll* v. *Coal Creek Coal Co., supra; Gammons* v. *Johnson, supra; Gammons* v. *Gulbranson, supra; Fetters* v. *Wittmer Oil & Gas Properties,* 258 Mich. 310.

In fairness to both Griffith and appellant, it should be said that the briefs inform us that neither has had relations with Donohue since this controversy arose.

Judgment affirmed, with costs.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred.