WILSON *v.* SAGINAW CIRCUIT JUDGE.
CHAFFEE *v.* STENGER.

1. DISCOVERY—SCOPE OF EXAMINATION.
    The subject matter of an order for discovery is limited to any matter not privileged but admissible under the rules of evidence governing trials, which is relevant to the subject matter of claim or defense involved in the pending action (Court Rule No 35, § 6[a], [b] [1945], as added and amended).

2. SAME—STATEMENTS AND REPORTS OF WITNESSES OBTAINED BY INSURERS.
    Statements and reports of witnesses and parties to action, procured by the defendants' insurance companies are properly the subject of an order for discovery, since, if they are called to testify at the trial, the contents of their prior extrajudicial statements and reports can be used for their possible impeachment by the opposite party (Court Rule No 35, § 6[a], [b] [1945], as added and amended).

3. SAME—ADMISSIBILITY OF EVIDENCE.
    The requirement of admissibility of evidence of which discovery is sought is satisfied if the matter sought to be discovered is admissible by any party and is not limited to matters admissible in evidence by the party seeking discovery (Court Rule No 35, § 6[a], [b] [1945], as added and amended).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3, 4] 17 Am Jur, Discovery and Inspection § 1 *et seq.*
[2, 6, 7] 17 Am Jur, Discovery and Inspection § 28.
    Statement of parties or witnesses as subject of pretrial or other disclosure, production, or inspection. 73 ALR2d 12.
    Privilege of communications or reports between liability or indemnity insurer and insured. 22 ALR2d 659.
[5] 17 Am Jur, Discovery and Inspection § 70 *et seq.*
5 Am Jur 2d, Appeal and Error §§ 684–701.
[8] 17 Am Jur, Discovery and Inspection § 16.
    Privilege of communications or reports between liability or indemnity insurer and insured. 22 ALR2d 659.

(404)

4. SAME—OBJECTIVE OF PRETRIAL DISCOVERY—ADMISSIBILITY OF EVIDENCE.

> The ultimate objective of pretrial discovery is to make available to all parties in advance of trial all relevant facts which might be admitted in evidence at trial (Court Rule No 35, § 6[a], [b] [1945], as added and amended).

5. SAME—BRIEFS.

> Information outside the record relating to matter sought to be discovered may not properly be included in a party's brief (Court Rule No 35, § 6[a], [b] [1945], as added and amended).

6. SAME—ATTORNEY-CLIENT RELATION—REPORT OF LOSS.

> Defendant's statement to his insurer and proof of loss to his insurance carrier, sought to be discovered by plaintiff in action for injuries received in explosion and fire on defendant's premises, *held*, not barred from discovery by reason of alleged attorney-client relation in the absence of testimony as to when the report of loss was made, when and by whom defense counsel was retained, the relationship between defendant's counsel and his insurance company, including the degree of control each exercised over the activities of the other, or any other proofs pertinent to the claimed agency; and there being no showing that the work product of an attorney for a party needed protection (Court Rule No 35, § 6[a], [b] [1945], as added and amended).

7. SAME—STATEMENTS AND REPORTS OF WITNESSES AND PARTIES OBTAINED BY INSURER.

> Orders for discovery of statements and reports of witnesses and parties procured by the insured party's insurance carrier, not having been shown to have been obtained by defendant's attorney, *held*, to have been properly entered, where defendants have failed to show good cause for denying the requested discovery as it was their burden to do (Court Rule No 35, § 6[a], [b] [1945], as added and amended).

> Per CARR, C.J., and DETHMERS, KELLY, BLACK, KAVANAGH, SOURIS, and SMITH, JJ.

8. ATTORNEY AND CLIENT—PROFESSIONAL PRIVILEGE—DISCOVERY—ADMISSIBILITY IN EVIDENCE.

> A liberal interpretation of the common-law right of professional privilege between attorney and client is followed in this State in that the privilege is not confined to communications made for the purpose of obtaining advice but extends to communications made to the attorney in the course of any professional

employment and relating to the subject of the employment, and which may be supposed to have been drawn out in consequence of the relation in which the parties stand to each other, hence, such communications may not be disclosed through the use of discovery procedure as they would be privileged (Court Rule No 35, § 6[a], [b] [1945], as added and amended).

9. SAME—WORK PRODUCT—DISCOVERY.

The privileged work product of an attorney that is not subject to discovery procedures is that part of the preparatory file he has obtained personally, not vicariously, in the performance of his personal-to-client duty in the preparation of a case (Court Rule No 35, § 6[a], [b] [1945], as added and amended).

Per CARR, C.J., and BLACK, KAVANAGH, SOURIS, and SMITH, JJ.

Mandamus by Leo A. Wilson against Hon. Fred J. Borchard, Saginaw County Circuit Judge, to compel him to vacate order for discovery of statements made by principals and witnesses in 5 personal injury cases arising from automobile collision and instituted under the civil damage provision of the liquor control act. Submitted June 5, 1962. (Docket No. 49,559.) Writ denied June 6, 1963.

Appeal from Saginaw; Borchard (Fred J.), J. Submitted January 9, 1963. (Calendar No. 19, Docket No. 49,687.) Decided June 6, 1963.

Case by William Chaffee against William Stenger, doing business as Bill's Junction Garage, for personal injuries sustained in explosion and fire on defendant's premises. Plaintiff asked discovery of defendant's report of loss and of statements made by parties and witnesses. On order for such discovery, defendant appeals. Affirmed.

*Roger J. Oeming,* for plaintiff Wilson.

*Peter F. Cicinelli* and *Eugene D. Mossner* for defendant Saginaw Circuit Judge.

*Amicus Curiae: Fred Roland Allaben,* in mandamus action, asking clarification of rules pertaining to discovery.

*van Benschoten & van Benschoten,* for plaintiff Chaffee.

*Stanton, Taylor, McGraw & Collison (Ralph B. Taylor,* of counsel), for defendant Stenger.

SOURIS, J. These cases[1] require our determination whether statements and reports of witnesses and parties procured by an insured party's insurance carrier were subject to discovery under the provisions of our former Court Rule No 35, § 6 (a) (1945).[2] Since January 1, 1963, discovery such as was sought and ordered in these cases has been subject to the provisions of our new court rules, specifically GCR 1963, 302.2, 306.2, and 310.

It is quite apparent that the controversies presented to us in these cases arose as a result of our recent decision in *Kalamazoo Yellow Cab Company* v. *Kalamazoo Circuit Judge,* 363 Mich 384, in which

[1] Wilson *v.* Saginaw Circuit Judge is an action in mandamus by a defendant in a negligence action against the trial judge to vacate a pretrial order of discovery. The record, as distinguished from the arguments of counsel, discloses that only 3 prospective trial witnesses' written statements given to Wilson's insurer are involved in the dispute between the parties to the negligence action. The discovery order here challenged requires production of all statements given by defendant or other witnesses to defendant's insurance carrier. In Chaffee *v.* Stenger, an appeal in the nature of mandamus, the discovery order sought to be vacated requires defendant to produce statements of certain designated prospective witnesses, including both plaintiff and defendant, and the defendant's report of loss to his insurance carrier. As in Wilson, the record (par 4[e] of the application for leave to appeal) discloses that the statements and report were procured by defendant's insurance carrier.

Pending our disposition of the Wilson Case, we have stayed proceedings below in several other cases in which the same issues are involved.

[2] As added in 1952 and amended. See 334 Mich xl and 352 Mich xvii.—REPORTER.

we held that a written automobile accident report given to the taxicab company by its driver was subject to discovery under Court Rule No 35, § 6, but only for possible use at trial to impeach the driver if called as a witness (the only purpose for which its discovery was requested) unless subsequently shown to be otherwise admissible. In the *Kalamazoo Case,* as in *Berney* v. *Volk,* 341 Mich 647, 649, 650, and *Sovereign* v. *Hart,* 363 Mich 32, 37, we clearly construed Court Rule No 35, § 6 (a), to be subject to the limitations of section 6 (b).[3]    See, also, *Tomlinson* v. *Tomlinson,* 338 Mich 274, 278, and *Christie* v. *Board of Regents of University of Michigan,* 364 Mich 202, at 230 (dissenting opinion). The issue was presented in the *Kalamazoo Case* by the taxicab company's claim in the trial court and before this Court that its driver's accident report was not subject to discovery because it was not "admissible under the rules of evidence governing trials" as required by section 6 (b). In the cases before us now, the same claim is repeated, but in addition it is also

---

[3] "Sec. 6. (a) In any civil action the court may at any time permit any party by order of the court to compel the production, examination or inspection of any books, documents or other tangible things and to take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes. The time, place and scope of the examination shall be fixed in the order authorizing the taking of the deposition. The attendance of witnesses may be compelled by the use of subpoena and the deposition of a person confined in prison may be taken only by leave of the court on such terms as the court prescribes.

"(b) The order of the court for pretrial depositions and discovery, unless for good cause otherwise shown, shall permit the examination of the deponent regarding any matter, not privileged and admissible under the rules of evidence governing trials, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and locations of persons having knowledge of relevant facts. The court may require parties to claim or waive physician-patient and hospital-patient privilege in fixing the scope of the examination and a claim of privilege at the pretrial hearing excludes such testimony if offered later in the trial."

claimed that the reports and statements should be
immune from discovery by application of the at-
torney-client privilege (also recognized as a basis
for exclusion from discovery by section 6 [b]) to
information obtained by insurers for use by attor-
neys in defending their insureds against claims and
by public policy against discovery of an attorney's
"work product."

Setting aside for the moment the questions of
privilege and "work product" policy, and consider-
ing first the claim that the documents ordered dis-
covered in these cases were inadmissible in evidence
within the meaning of section 6 (b), we see no valid
basis for distinguishing the prospective witnesses'
and parties' statements and reports procured by
defendants' insurance companies and the adjudicated
admissibility of the driver's accident report in the
*Kalamazoo Case.* In the event the prospective wit-
nesses or the parties are called to testify at trial,
the contents of their prior extrajudicial statements
and reports can be used for their possible impeach-
ment by the opposite party and, consequently, they
are not barred from discovery under section 6 (a)
by the admissibility requirement of section 6 (b).
Plaintiff Chaffee's statement procured by defendant
Stenger's insurer may not, of course, be used by
him for his own impeachment, but the admissibility
qualification of section 6 (b) is without the further
express or implied limitation that it must be ad-
missible upon the offer of the party seeking its
discovery. In other words, the requirement of ad-
missibility is met if the matter sought to be dis-
covered is admissible by any party. That this con-
clusion accords with the contemplated use of our
discovery procedures under Court Rule No 35, § 6,
was indicated by the author of Honigman's Michigan
Court Rules Annotated, 1959 Pocket Part, pp 77, 78:

"Whereas discovery was formerly the rare exception, the new provision makes discovery the rule rather than the exception. This basic change should serve to remold the concept of trial work. It means that there no longer need be any surprises which confront an attorney at the time of trial. It means that each side can have available to it before going into trial practically all of the testimony that is to be used by the opposite side.

"With each side knowing what the other side will be able to show at the trial, there is increased opportunity for a more realistic determination on the part of attorneys and their clients as to the advisability of settlement."

It is consistent also with fundamental principles implicit in all statutory and rule provisions for liberal discovery. In *Hickman* v. *Taylor* (1947), 329 US 495 (67 S Ct 385, 91 L ed 451), the United States supreme court expressed the objective to be served by pretrial discovery as follows, at p 507:

"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. But discovery, like all matters of procedure, has ultimate and necessary boundaries."

The boundaries of Michigan's discovery procedure are more limited than those of the Federal procedures considered in *Hickman* v. *Taylor,* there being

no admissibility requirement in the Federal rules[4] such as there is in ours, for example. But whatever the differences, the ultimate objective of pretrial discovery is to make available to all parties in advance of trial all relevant facts which might be admitted in evidence at trial. To so narrowly read the admissibility requirement of section 6 (b) that it would permit discovery only of those matters admissible in evidence by the party seeking discovery would too frequently thwart a litigant's proper inquiry before trial of "the facts underlying his opponent's case."

In further support of the effort to bar discovery of the documents, it is argued that Stenger's statement and report of loss to his insurance company should be treated as confidential communications from a client to his attorney to be conveyed to the attorney through the insurance company as an intermediary or agent, and thus privileged (within the meaning of section 6 [b]) from discovery. Upon careful examination of the record of the Chaffee case, we find that no proofs were offered in the trial court, by affidavit or otherwise, to show when defendant's report of loss was made (although defendant's counsel improperly included in his brief on appeal information outside the record relating to this matter); when and by whom defense counsel was retained; the relationship between defendant's counsel and his insurance company, including the degree of control each exercised over the activities of the other; or any other proofs pertinent to the claimed agency. Absent such proofs, we cannot find, on this record, that defendant Stenger's statement and report of loss to his insurance company were

---

[4] See 28 USCA, Federal Rules of Civil Procedure, Rules 26–37, particularly Rule 26(b) and (d), Rule 30(b) and (d), Rule 31(d), Rule 33 and Rule 34.—REPORTER.

barred from discovery as privileged communications or otherwise.

It is not claimed that the statements of prospective witnesses other than parties procured by the insurance companies are within the scope of the insureds' privileged communications with their attorneys, nor could such claim be made. Instead, it is claimed that the bar against their discovery is raised because they represent the attorneys' "work product" procured by their agents, the insurance companies. Even if we were to assume that the policy which bars an attorney's work product from an opposing litigant's inquiry extends to data assembled for the attorney by his agents, these appellants are not entitled to urge this claim in these cases. As we have already noted, the record in the Stenger case does not even permit our determination of the nature of the relationship between defendant's counsel and his insurance company. The record in Wilson discloses employment of defense counsel by the insurer, not the defendant; that statements were taken by insurance agents even before employment of counsel; and that the insurance company determined which statements to disclose to its trial counsel and which to withhold even from him. Nothing in that record, any more than in Stenger's permits our finding that counsel engaged the services of insurance agents to assemble for him his "work product." The judicial policy which protects an attorney's work product from discovery by his adversary, considered at length in *Hickman* v. *Taylor, supra*, may not be invoked in the circumstances of these cases to justify exclusion from discovery of witnesses' statements obtained, not by counsel personally or even at his request and under his direct supervision, but rather by the agents of an insurance carrier acting so independently of counsel that the

insurer even withheld from counsel subsequent notice that such statements had been taken.

We conclude that neither the attorney-client privilege nor the public policy underlying exclusion of an attorney's work product is applicable to bar disclosure before trial in these cases of the witnesses' statements, Stenger's statement, or his report of loss. Defendants below having failed to show good cause otherwise for denying the requested discovery, as it was their burden to do in accordance with section 6 (b), we hold that the orders for discovery were properly entered and that defendants below are not entitled to their vacation by order of this Court. Accordingly, the order to show cause in the Wilson case is dismissed and the order from which appeal was taken in the Chaffee case is affirmed. The prevailing parties may tax their costs.

Carr, C. J., and Dethmers, Kelly, Black, Kavanagh, and Smith, JJ., concurred with Souris, J.

Black, J. (*concurring*). The thoroughly bandied decision of *Hickman* v. *Taylor,* 329 US 495 (67 S Ct 385, 91 L ed 451), decided in 1947, has spawned a curious congeries of judicial confusion.[1] Discovery in the text of today's issue has become an uncertain variable of provincial discretion, differing according to views of judges among the Federal circuits and Federal districts, and differing undeniably in the respective circuits of our State. The reason, as I see it, is that no court of ultimate authority has as yet defined with precision the "work product of the lawyer," and has then declared the extent to which— if at all—the traditional privacy of that product may be invaded by discovery proceedings.[2]

---

[1] See Buell Doelle, "Weapons of Discovery", 42 MSBJ No 4 (April 1963), 18, 23, 24.

[2] Consider, as a related aside, the Topsy-grown practice by which disclosure of the identity of witnesses the lawyer and his client may

*Hickman* does not, of course, control the authority of this Court to declare and apply the common law of Michigan or to provide the discovery procedures of Michigan courts of record. It does, by way of the Court's conclusion, point up the controversial nature of the issue which has come to us from the Saginaw circuit. That conclusion provides our overture (*Hickman* at 513, 514):

"We fully appreciate the widespread controversy among the members of the legal profession over the problem raised by this case. It is a problem that rests on what has been one of the most hazy frontiers of the discovery process. * * * When Rule 26[3] and the other discovery rules were adopted, this court and the members of the bar in general certainly did not believe or contemplate that all the files and mental processes of lawyers were thereby opened to the free scrutiny of their adversaries. And we refuse to interpret the rules at this time so as to reach so harsh and unwarranted a result."

*Hickman* and *Kalamazoo Yellow Cab Company* v. *Kalamazoo Circuit Judge,* 363 Mich 384, are cited and relied upon by all present counsel. Neither fits directly the specific issue Justice SOURIS has stated in the first sentence of his opinion. In *Hickman* the supreme court was asked to expose for the claimant-petitioner certain written statements (of witnesses) attorney Fortenbaugh, "as counsel and agent for defendants" (tug owners and railroad), had obtained "in the course of preparation for possible litigation." In the *Kalamazoo Cab Case* this Court dealt exclusively with pretrial discovery of a written accident report *made to the defendant employer by its* charged-with-negligence *employee.* An order for

or may not call to the stand is—by some judges—penalty-compelled at pretrial. This indeed, unless resisted, prys into the attorney's strategy as well as his "mental impressions" and "legal theories."

[3] 28 USCA, Federal Rules of Civil Procedure, Rule 26.—REPORTER.

discovery thereof, upon reasons given in our opinion, was upheld. Here we deal with a plaintiff's claimed right to discovery of written statements and reports, by witnesses and parties, which legal strangers to the pending suit have obtained. Such strangers are the liability insurers of the respective defendants.

In the *Kalamazoo Cab Case* the party obtaining and possessing that which the plaintiff discovered was the sued defendant.[4] In the *Hickman Case* the party who had obtained and possessed what the claimant did not discover made up the professional part of the privileged relationship. In the present cases nothing privileged by an attorney-client relation is sought, by discovery. Once that is clear, no problem remains. The circuit judge, not impeded by the rule of privilege, was clothed with discretion to order that counsel for the insurers should produce the statements and reports such insurers had obtained prior to the engagement or involvement of such counsel and prior to their appearance for the sued defendants.

By *People* v. *Pratt,* 133 Mich 125 (67 LRA 923), followed in *Lindsay* v. *Lipson,* 367 Mich 1, 5, this Court is committed to "a somewhat liberal interpretation" of the common-law right of professional privilege when the necessary relationship exists. We said, in the *Pratt Case* at 129:

"The privilege is not confined to communications made for the purpose of obtaining advice. It extends to 'communications made to an attorney in the course of any professional employment, relating to the subject of the employment, and which may be supposed to have been drawn out in consequence of the relation in which the parties stand to each other.'"

---

4 That, too, was the situation in *La Croix* v. *Grand Trunk W. R. Co.,* 368 Mich 321.

*Pratt's* "liberal" rule defies discovery of the lawyer's "work product." There remains only the task of definition of such product; the product which does not of course include any or all of the interpretive or triable, and hence discoverable, subject matter of the litigation; such as the questioned deed or contractual documents, the allegedly mislabeled pills or the allegedly defective king pin the pharmaceutical or automotive defendant has manufactured and marketed, or any like tangible constituting such subject matter or essential part thereof.

Without intending to relate the case or its thrust to the parties in interest before us, I deem it well to repeat at the juncture what was said of the attorney-client relationship in *Hightower* v. *Detroit Edison Co.,* 262 Mich 1, 9, 10 (86 ALR 509):

"The rights and duties arising out of the relationship of attorney and client are not measured by the yardstick of commercial or trade transactions. The relation is purely personal. The lawyer owes to his client undivided allegiance. There is no place in the relationship for its establishment by a middleman having an interest in the *res* or control of the procedure. The fact it is so established or initiated makes the attorney so far the agent of the middleman as to charge him with knowledge of all arrangements under which the middleman assumes to act. * * *

"As long as the attorney owes, or deems he owes, to the middleman any duty connected with the plaintiff's case so that he cannot extend undivided allegiance to the client, he remains agent of the middleman. If appellant, *bona fide,* had established with Mrs. Powell the relationship of attorney and client, wholly divorced from Donohue, the case would be different. But he did not. He considered Donohue as well as plaintiff his client in the case."

Consider now the true attorney and client relationship as that relationship has been known throughout development of the common law, and assume for illustration that the client is a newly sued defendant. He picks and engages his lawyer to represent him, and to undertake the defense according to due methods of practice and preparation. The attorney duly assumes such work. In the diligent course thereof, he interviews and obtains written statements of persons who may be callable as witnesses and some who, upon investigation, may not. The statements of the latter, negatively attesting that they did not see, hear, or otherwise acquire admissible knowledge, are taken by the attorney to guard the client against possible lapses or changes of memory by the statement-givers. The attorney obtains and carefully preserves for admissibility copies of documents, photographs, and, probably, bits or items of documentary or physical proof which, if aided by testified identification and relation to the presented issue or issues, may become admissible to support the defense or overcome the plaintiff's thrust. He briefs and records the substantive and procedural legal aspects of the case, interviews and engages the aid of expert witnesses, and prepares for his own ready use a chronology of memoranda of discovered facts and of their indicatively admissible and timable employment in court. In short, he prepares his client's case according to the developing needs thereof, and maintains in the preparatory file he has made the very tools by which his personal-to-client duty is performed. That file is the privileged "work product of the lawyer." It is not the "work product" of a vicariously liable insurer whose relation to its sued insured is contractual rather than professionally personal.

I would define that product with foregoing severity, the better to guard and protect historic privacy of the relationship it exemplifies. The attorney and his client have the exclusive right to decide at what stage if at all they are to bring forth such product or portions thereof during the *trial;* the *trial* as it was and supposedly is known to the common law; the *trial* that is (in a case properly triable to a jury) preserved as a right by the Constitution. See Cooley, J., in *Swart* v. *Kimball,* 43 Mich 443, 448; quoted in *Romero* v. *King,* 368 Mich 45, 50, holding the maintained right of jury trial is "the right as it existed before; the right to a trial by jury as it had become known to the previous jurisprudence of the State." That there may in extreme circumstances be some exception to this is presently immaterial, since the exception will probably prove out as being one of the exceptions the common law has always known.

It is clear that some of the concededly valuable *dicta* written in *Hickman* is Michigan-acceptable, and that some is not. See GCR 1963, 306.2. Pointed indeed is the observation of the supreme court (*Hickman* at 511) that, if the work product of the lawyer should be made "open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten." Trial counsel of experience would probably rather memorize and then personally destroy each fresh sheet of the product—as Stonewall Jackson did with each order from Lee—than carry the risk of having an opponent pry through, to any extent by judicial order, their diligently prepared files. Like the prohibition laws, orders to produce parts of such personally assembled product are, if issued, bound to be difficult of enforcement.

The foregoing is submitted to the profession in effort to draw that solid line where the judicial dis-

cretion provided by GCR 1963, 306.2 comes to an end and absolute privilege begins. There is no other way to protect the professional relationship from dilution and ultimate dissolution in the turbulent sea of judicial discretion. A caveat: To be sure, with the new rules now in effect, the attorney who takes a written statement from some party or witness, and fails then to deliver the statement-giver a copy thereof, probably waives for himself and his client the privilege otherwise enjoyed. That, however, is the apparent extent to which the new rules attempt to modify the professional privilege. Such extent is quite far enough.[5]

The foregoing convictions recorded, I agree with Justice SOURIS' disposition of both cases and with his holding that the statements and reports the respective insurers have obtained are discretionarily discoverable as against their plea of professional privilege. Since those statements and reports were not obtained by counsel, they are not discovery-immune on ground of professional privilege. And it is hardly necessary to add that a possibly related situation is not before us. I refer to the one where the counsel engaged to defend—by the liability insurer—has himself obtained the sought-to-be-discovered statements and reports.

CARR, C. J., and KAVANAGH, SOURIS, and SMITH, JJ., concurred with BLACK, J.

O'HARA, J., took no part in the decision of this case.

---

[5] GCR 1963, 306.2 probably, one of these days, will have to be amended to provide for the fortuity of loss of the delivered copy by the statement-giver, or of refusal by the statement-giver to disclose it.